## THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. R. F. O'NEILL.

1. MASTER AND SERVANT — *Injury to Servant — Negligence — Pleadings.* A petition in an action against a railroad company for personal injury, growing out of the alleged negligence of the servants of the company, must show to which servant or servants of the company negligence is imputed, and fully and definitely state what acts or omissions of such servants constitute the negligence complained of.

2. PETITION — *Motion to Make More Definite.* If the petition contains but a general allegation of negligence, it is subject to a motion requiring it to be made more definite and certain, and it is error for the court to overrule a proper motion presented for that purpose.

*Error from Lyon District Court.*

ACTION by *O'Neill* against the *Railroad Company*, to recover for personal injuries. Verdict and judgment for plaintiff, at the December term, 1889. New trial denied. Defendant brings error.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error:

1. The plaintiff in error was and is entitled to a judgment in its behalf against the defendant in error, and for costs of the case, notwithstanding the general verdict, upon the special findings of fact returned by the jury in this case. To fully understand the proposition here made, it will be necessary to give a specific statement of the facts in the case, concerning which there is either no dispute, or, if disputed, are found by the jury as herein stated.

After stating the facts, counsel further say: The case in the court below was tried entirely upon the theory that the head brakeman gave a signal or order to the engineer to move the train at the time it moved, and caused the injury, carelessly and negligently, and without any authority whatever. There was and is no evidence whatever in the record of any negligence which resulted in this injury, unless it was negligence, under the circumstances, for the head brakeman to instruct the engineer to move ahead at the time of defendant in error's injury, and this we shall assume will be conceded by the other side. It seems hardly possible that, under the circumstances shown by the evidence, and the findings of fact above quoted, but that the plaintiff below not only failed to establish any negligence, but that, on the contrary, the head brakeman (the only one charged with negligence) acted with great care and caution, and that the injury was the result of one of those unavoidable accidents which every man employed as plaintiff was employed assumes as one of the risks of his employment.

2. The district court erred in overruling the motion for a new trial.

(a) The only charge of negligence contained in the petition filed by plaintiff below reads as follows:

"And this plaintiff avers that said injury occurred wholly without any fault or negligence on his part, and wholly because of the gross carelessness and negligence of said defendant, its agents, and servants, and in violation of all proper rules and regulations for the management and handling of cars under such circumstances."

To this petition defendant filed a motion to make it more definite and certain in certain particulars set forth therein, which motion the court overruled, as also a general demurrer to the petition.

There can hardly be any question but that the motion to make this petition more definite and certain, in reference to the negligence sought to be charged, should have been sustained. *Young v. Lynch*, 66 Wis. 514; *Waldheim v. Railroad Co.*, 71 Mo. 514; *Edens v. Railroad Co.*, 72 id. 212.

The general allegation as to these matters might have been reached by a motion to have the complaint made more specific; but the complaint is not necessarily bad as against a demurrer, because the allegations are thus general. *C. H. & D. Rld. Co. v. Chester*, 57 Ind. 297; *Jones v. White*, 90 id. 255; *C. C. C. & I. Rly. Co. v. Wynant*, 100 id. 160; *L. N. A. & C. Rly. Co. v. Krimming*, 87 id. 351, 352; *Boyce v. Fitzpatrick*, 80 id. 526; *L. N. A. & C. Rly. Co. v. Jones*, 9 N. E. Rep. 479. After the filing and overruling of the motion, the petition should have been held bad upon the demurrer, under the decision of this court in *Stewart v. Balderston*, 10 Kas. 106.

(b) The court committed numerous errors on the trial of the case below in permitting evidence to be introduced which was clearly irrelevant, incompetent, and immaterial.

Again, the plaintiff placed Mr. Boltz upon the stand, and after showing by him the different movements of the engine upon the signals given by him to the engineer, and received, as he believed, from the conductor, disclosed that Conductor

Ingalls came running back after the last movement of the train (being the movement which injured plaintiff below) to the place where the brakeman was standing; and then the witness was asked what Ingalls said to him (the witness). This question was properly objected to, and the objection overruled, and the witness was permitted to answer, as follows:

"A. Why, when he came up to me he asked me what caused me to start the engine; he asked me who gave me the signal to pull ahead; I told him he did; he said he did n't; I told him some person did; he said no person did n't around there; I told him some person around there gave the signal to pull ahead."

The defendant moved to have the answer withdrawn, which motion was overruled and excepted to. This conversation between the conductor and the brakeman was had after the injury, and after the conductor had had to travel 450 to 500 feet from where he was standing at the time of the injury to the point where witness was; and therefore it was clearly hearsay, and no part of the *res gestae*, under the many decisions of this court. *Tennis v. Rapid Transit Rly. Co.*, 45 Kas. 509.

(c) The court erred in refusing to give instructions requested by plaintiff in error.

In view of the examination made by the plaintiff below of his own witness, it seems to us that the court should have given either the third or fourth special instruction requested by the plaintiff in error. 1 Greenl. Ev., § 442. Under the peculiar circumstances of this case, the court should have given the ninth instruction requested. There is no question but that it is a correct statement of the law, and that it was and is applicable to the facts in this case. There was and is no instruction given by the court which covered the same proposition.

(d) The court erred in its instructions to the jury.

(e) The jury found many material findings of fact absolutely contrary to all evidence in the case, and made material

findings of fact so inconsistent with each other and with the evidence as to require a reversal of this case, under the familiar rules established by this court in reference to such matters.

(*f*) The jury disclosed by their verdict and by their answers to the special findings of fact that they were influenced by passion and prejudice, and not influenced by any desire to do right, in returning their verdict. The amount of damages for the actual loss was excessive, and was clearly given under the influence of passion and prejudice. It fully appears from the evidence of the physicians that an artificial leg could be used by the plaintiff below, so that his injury would not greatly cripple him; and yet the jury gave a sum largely in excess of what should, under any reasonable rules, be given in such a case. *K. C. F. S. & G. Rld. Co. v. Kier*, 41 Kas. 671.

(*g*) The findings of fact showing that Boltz believed he saw a signal, at the time he communicated to the engineer an order to move the train forward the last time, are entirely inconsistent with the general verdict and with the other findings of fact; and if such findings do not entitle the plaintiff in error to judgment on the findings in its favor, they certainly should entitle it to a new trial.

*J. Jay Buck*, and *I. E. Lambert*, for defendant in error:

1. Counsel for plaintiff in error say in their brief, that "the case in the court below was tried entirely upon the theory that the head brakeman gave a signal or order to the engineer to move the train at the time it moved, and caused the injury," etc. Now, the case below was tried, and is here presented, upon the theory and the fact that the car needed repairing, and that the yardmaster left the matter entirely in the hands of the conductor. The yardmaster stood by and saw them under the train and knew their danger, and did nothing to protect them. The conductor ordered plaintiff out to do this work, and plaintiff relied upon the conductor protecting him, and that it was a part of plaintiff's duty. The yardmaster, conductor and rear brakeman stood with their lanterns on the ground by the side of the car, and they did not move

their lanterns, and gave no signals, and all this in view of plaintiff; hence, he had a right to rely upon them and feel safe.

2. The second point made is, that the court below erred in not granting a new trial, for the following reasons:

(*a*) That the petition is indefinite, and the motion should have been sustained. The petition states, among other things, that the car having become disabled, the conductor ordered plaintiff and his assistant to repair it, and it then and there became necessary, to properly repair said car as ordered, for plaintiff to go under it, and that while plaintiff was under the car, and necessarily there pursuant to the orders he had received, the engine was violently and suddenly started forward, without notice or warning to this plaintiff, and against his positive orders and the orders of the conductor in charge of said train, . . . and the car (under which plaintiff was working) was so forcibly and violently jerked forward as to cause the injury, as specifically explained. Then follows what counsel for plaintiff in error quotes as the only allegation of negligence. We think the petition stated the facts. True, it did not purport to set out all the evidence; did not state how lanterns were swung, if any were swung; nor with which hand the engineer started the engine; or whether he started upon an improper signal; or without signal; nor if he had a signal; nor none should have been given him. The motion desired us to state whether the engine was "started forward through the acts of any of defendant's employés." We trust this court will not assume that, when the men in charge of that train had sent plaintiff under the car with assurances that no movement of the train should be had except upon the order of the conductor, who was standing there by the car, strangers got on to that engine to experiment and see how easily they could kill the plaintiff. We assumed, and thought any court would assume, that at such a time the proper men would be in the proper place, and if the train moved it might be inferred that some of the railroad hands connected with the train moved it.

Next, they desired us to state the names of the negligent

employés, or the positions occupied by them, which would be the same as naming them. If we had averred one brakeman, they could easily have proved it was the other. In practice, such requirements would work a repeal of any law authorizing this kind of suit, for no recovery could be had. There was no necessity for such averment, because the defendant company knew better than plaintiff what man was at a given post. The plaintiff knew that his injuries were caused by the negligent starting of the train, and was not in a condition to know how it happened, and no rule should require him to guess, at his peril, how it happened. He knew it was done without his order, and without the order of the conductor, and in violation of the assurances given him.

Next, we were required to set out the rules which had been violated. We had averred that the conduct was "in violation of all proper rules and regulations for the management and handling of cars under such circumstances." We think the evidence sustains us. We did not aver the existence of any rules.

The case, 66 Wis. 514, cited by counsel is in harmony with our practice, but we do not think our petition objectionable. That court, on page 516 of the opinion, says: "One object, and perhaps the principal object, of the motion, when made by the defendant, is to give him full knowledge of the plaintiff's claim against him, so as to enable him to answer understandingly," and, on page 519, it is intimated that when the "findings" are not stated, a motion should be sustained, "unless it was made to appear that the plaintiff was unable, from want of knowledge of the particular facts, to make a more definite statement." Now, we particularly stated the facts which caused the injury, and the court can see that we were not in a position to know more or state more. It is common knowledge that the defendant is always in position to know or find out every detail. We do not understand the Missouri or Indiana cases as going further than the Wisconsin case.

(b) It is insisted that the plaintiff might have had the car cut out. Suppose this is so. The yardmaster was there and

did not consult plaintiff's wishes.   The yardmaster stood by and left all to the conductor.

(c) It is insisted that it was error to refuse an instruction about the standing of a witness.   We did not seek to impeach any witness, and there was no occasion to direct the attention of the jury to it.   The ninth instruction requested by the defendant is covered by instructions 2, 3, 6, and 11, as given by the court, and need not be repeated.

(d) It is claimed that the fourth instruction was erroneous. It may have been open to criticism, but on the whole charge the jury were not misled.   We think it should be disposed of like a similar one was in *City of Emporia v. Schmidling*, 33 Kas. 490.

3.   The fifth objection is, that because of the findings of the jury a new trial should be ordered.

We do not think any material findings are inconsistent, and unless a finding is material it ought to be ignored.   In the record ( not in the printed opinion) in *Stone v. French*, 37 Kas. 145, 151, there were conflicting findings.   The 12 findings propounded by Stone and answered by the jury were plump against the general verdict.   One of the findings asked by French elicited an answer directly opposed to some of the answers relied on by Stone.   This court must have regarded them as immaterial, because in closing the opinion they are referred to as "technical and unsubstantial," and the case was affirmed, as we think this one ought to be, under §§ 140 and 304 of the code.

4.   Plaintiff objected to findings 54, 55, 56 and 57 being submitted to the jury, and, under the decision of this court in *S. K. Rly. Co. v. Pavey*, 48 Kas. 452, the court might have properly stricken them out.   If, then, the answers are not satisfactory, they certainly ought not control the general verdict.

The Indiana statute is like ours, and has been considered many times, and these decisions, which are but another way of stating the terms of the statute, are in point here: "Unless the special findings of the jury are irreconcilably incon-

sistent with the general verdict, the latter must stand, and judgment be rendered thereon without regard to such special findings." *Perry v. Makemson*, 2 N. E. Rep. 713; *Detroit Rly. Co. v. Barton*, 61 Ind. 293; *Grand Rapids Rld. Co. v. McAnnally*, 98 id. 412; *McComas v. Haas*, 8 N. E. Rep. 579; *Porter v. Waltz*, 8 id. 705; *Baltimore Rld. Co. v. Rowan*, 104 Ind. 88; *Ft. Wayne &c. Rld. Co. v. Byerle*, 11 N. E. Rep. 7.

5. In our opinion, the findings complained of cut no figure, and ought not to be used to the prejudice of the plaintiff below. *Dyer v. Taylor*, 7 S. W. Rep. 259; *Andsus v. Railroad Co.*, 42 N. W. Rep. 515; *Gatling v. Boone*, 7 S. E. Rep. 477; *Railroad Co. v. Goyette*, 133 Ill. 21. It will be noticed that in many of the special findings the jury answered when they were not required to answer, because of the answer to the preceding questions. Many of the questions refer to movements of the train prior to the time plaintiff was called out to repair the car, and cannot be considered.

6. If the word "facts," in § 285 of the code, means the prominent essential facts which go to make the case as stated in the pleadings, and as necessarily involved in the verdict, as stated by Judge BREWER in *National Bank v. Peck*, 8 Kas. 666, why do not the words "fact" and "facts" in the next two sections mean the same thing? We think they do. Many of the questions asked simply called for matters of evidence and for matters which were not really involved in the general verdict, nor proper as evidence. As stated by this court in *School District v. Howell*, 44 Kas. 290, many of the questions "involved unnecessary details and were in the nature of a cross-examination."

7. Two pertinent questions asked by plaintiff are answered, viz.:

"Is it not a fact that the starting up of the train which caused the injury was done without any notice or warning to plaintiff? A. Yes.

"Is it not a fact that the train was started, which starting caused the injury, without any signal being given by the con-

ductor or yardmaster, or any person authorized to give such signal, in that particular case? A. Yes."

Under the other conceded facts in this case, the record shows gross negligence on the part of the defendant.

8. By § 286 of the code, the court was authorized to "direct the jury to find upon particular questions of fact." Under 8 Kas. 666, *supra*, and authorities hereinafter cited, these facts should have been such, and such only, as inhered in the general verdict; such as showed the extent of the plaintiff's injury, including the question of its permanency, the question of negligence of defendant and contributory negligence of plaintiff. No other questions belonged there. The jury were besieged with questions concerning occurrences prior to any averred negligence, and in no sense explanatory thereof.

Sixty-two special questions were asked by defendant. We submit that, under the pleadings and evidence, but 13 of them were proper, material, or relevant, viz., numbers 1, 11, 12, 30, 32, 33, 34, 38, 39, 40, 43, 53, and 59. The plaintiff in error insists that many of them were not answered in accordance with the evidence, and we admit that some of them are not, but they were immaterial, and under no circumstances could form any part of the general verdict, nor would the exact facts, if conceded by the pleadings, in anywise control the verdict. Irrelevant, immaterial or frivolous questions should not be submitted; only those which are pertinent to the issues and necessarily to be determined by the jury. *Bent v. Philbrick,* 16 Kas. 192; *St. J. & D. C. Rld. Co. v. Chase,* 11 id. 57; *Railroad Co. v. Plunkett,* 25 id. 188. See, also, *Manning v. Gasharie,* 27 Ind. 399; *Blacker v. Slown,* 16 N. E. Rep. 622; *Louisville &c. Rld. Co. v. Wood,* 14 id. 585; *Louisville &c. Rld. Co. v. Hubbard,* 18 id. 612.

9. If the special findings can, upon any hypothesis, be reconciled with the general verdict, the former will not control the latter, and the court must give judgment on the general verdict. All reasonable presumptions will be indulged by this court in favor of the general verdict, while nothing will be presumed in aid of the special findings of

fact. *Amidon v. Goff,* 24 Ind. 128; *Woollen v. Wishmier,* 70 id. 108; *Carver v. Ludy,* 80 id. 335; *Baltimore &c. Rld. Co. v. Rowan,* 104 id. 98; *McCallister v. Mount,* 73 id. 559; *Cook v. Howe,* 77 id. 442; *Lassiter v. Jackman,* 88 id. 118.

10. The sixth point made is that the judgment was excessive, and therefore the case should be reversed. We did not in terms show how much plaintiff had been earning, although he was occupying a somewhat important position, and it might well be inferred that his time was valuable, but to avoid any question we remitted the $770, as stated. It is asserted "that the amount awarded for pain and suffering was and is, beyond all question, grossly excessive." How do the learned counsel know this? How many times have they lost a leg? Can they or this court tell just what would be the proper sum? The court below heard the evidence, saw the plaintiff, and has approved each item of the plaintiff's recovery. A different rule now prevails than what might be adopted if this court were sitting at *nisi prius,* or serving as jurors. Here was an unmarried man, 25 years old, and is suddenly deprived of a leg. His ambition, involving business and social success and the rearing of a respectable family, is suddenly checked. The warm impulses that surged through his being are changed to icy stagnation. Doubtless he often regretted that sudden death had not terminated his woes and disappointments. We think the verdict is correct, and invite attention to *Thurston v. Martin,* 5 Mason, 497, 499; *Berry v. Vreeland,* 21 N. J. L. 183; *Harris v. L. N. O. & T. Rly. Co.,* 35 Fed. Rep. 116. See, also, *Worford v. Isbel,* 1 Bibb (Ky.), 247; *Sheehy v. Cable Rly. Co.,* 94 Mo. 574; *Coffin v. Coffin,* 4 Mass. 1.

In *Walker v. Erie Rly. Co.,* 63 Barb. 260, a $20,000 verdict was sustained and no limb lost. Attention is specially invited to the following verdicts sustained: 11 Gratt. 697, $9,000; 73 Texas, 326, $12,000; 32 Fed. Rep. 303, $4,000 (and the court says it was too small); 12 Colo. 244, $7,500; 23 Wis. 186, $8,000; 35 Ill. 487 (wrongful arrest, etc.), $10,-

000; 64 Miss. 584, $15,000; 65 Wis. 323, $5,000 (lady, 70 years old); 31 Kas. 197, $10,000.

The doctrine for which we contend is fully sustained in Sedg. on Dam. (8th ed.), § 1320, *et seq.* Section 1321 asserts that the verdict must be clearly excessive to be set aside (citing cases); so great as to appear outrageous (citing cases); so as to strike any one with its enormity and injustice (cases); so large that no 12 men could reasonably have given it (citing *Praed v. Graham*, 24 Q. B. Div. 53, decided in 1889).

11. Here was a young man of good information, fair education, good looks, excellent habits, single, 25 years of age, and has a leg torn off. Shall this court now schedule the amount of suffering, mental and physical, which he endured? decide what successes or fortunes would have come to him in mechanics, literature, business, or statesmanship? When the law-making branch of government has fixed no limit, but left that to a jury, shall this court disturb the verdict of a jury, fairly and dispassionately rendered, and approved by the district judge?

12. The head brakeman had 2 months and 10 days' experience, and no more. No wonder he mistook one thing for another. A life was at stake, and should not have depended upon his ignorance and inexperience. Certain it is that the engineer should have obeyed the instructions of the conductor. So far as plaintiff was concerned, the engineer ought not to have started until the conductor came to him for that purpose. If the conductor had not so directed the engineer, both these officials would have testified denying any such instructions.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error in reply:

1. The answer attempted to be made in the brief of defendant in error to our proposition that our motion for judgment should have been sustained is misleading, and entirely unwarranted by the evidence in the case. There was absolutely no proof of any kind that the yardmaster left anything to the conductor, or in any manner assented to the conductor's

taking charge of that train while the repairs were being made. It is true the defendant in error was permitted to testify over our objections that the conductor promised him to instruct the engineer not to move without verbal orders, and that he then went toward the engine, and upon returning reported that he had given such instructions. Upon this evidence, it is claimed that plaintiff below had a right to go under the engine in reliance upon these statements and the promise contained therein, and that as the promise was broken he can recover.

We have shown that the train at that time was entirely under the control of the yardmaster, and that plaintiff below had the right either to rely upon the yardmaster's taking proper precautions, or he had the right to have the engine cut off from the train. This being the case, plaintiff had no right to rely on the promise of a person who had no authority in the premises. More than this, it fully appears beyond any dispute in this case, that after the conductor had returned and reported that he had instructed the engineer to move only upon verbal orders, and while plaintiff was standing by the car, and before he went under it, the car was moved ahead, then stopped and then backed, upon signals made with a lamp only to the head brakeman, and communicated by him to the engineer. It fully appears beyond any question, that the plaintiff below, after he had been informed by the conductor that the engineer would only move on verbal orders, knew, because he saw, that the engineer moved that portion of the train attached to the engine in violation of such promise, and upon signals only, both forward and backward, immediately preceding his getting under the car, and that he then went under without waiting for or giving time to have the engineer given instructions again. This action upon his part not only waived any right under the promise, but disclosed either that no such promise was made, or that it was not relied upon.

Again, not only the plaintiff below failed to prove that the conductor had any authority in the premises to make such a promise, but clearly disproved the same. Under the rule laid down in the case of *Solomon Rld. Co. v. Jones*, 30 Kas. 601,

there could be no liability on behalf of the company growing out of any statements made by the conductor at that time to the plaintiff below.

2. In reply to our second point, counsel say they have pleaded the facts which make the company liable. This statement cannot be correct. The facts they set out, as quoted in their brief, so far as this question is concerned, are as follows:

"The engine was violently and suddenly started forward, without notice or warning to this plaintiff, and against his positive orders and the orders of the conductor in charge of the train, . . . and the car was so forcibly and violently jerked forward as to cause the injury."

Conceding this to be a statement of facts, it is perfectly sure that the facts so stated absolutely fail to state any liability on the part of the railroad company. The fact that the engine started suddenly and violently, against orders, and thereby injured plaintiff below, does not establish negligence on the part of the company or its employés, as negligence is never presumed as between the company and its employés; and hence, the facts which create it should always be pleaded. Instead of stating the facts which would make the sudden movement of the engine negligence as to the plaintiff, a conclusion of law, merely, was pleaded. It will be seen that it is alleged that the company itself, its agents and servants, were guilty of gross negligence and carelessness. This court has often determined that gross carelessness and negligence can only exist when the lack of care is so great as to amount to an intentional wrong or injury; and, therefore, it would seem to us that when no facts are given which would warrant such a statement, and the statement is made, we certainly ought to have the right, upon proper motion, to have the facts stated instead of the conclusion. If the pleader could with any fairness characterize the transaction as the result of gross carelessness and negligence, he certainly could have set out the facts upon which he based such a conclusion.

3. It is contended that the yardmaster stood by and did not consult plaintiff's wishes as to having the car cut out, as an

answer to our position that plaintiff below assumed the hazards of the situation and of such accidents, because he had the right to have had the engine entirely disconnected. Our answer is, that it being a right and privilege of the plaintiff below to have the engine cut off if he wished it, there was nothing for the yardmaster to do about the matter until plaintiff made known his wishes upon the subject; and hence, the fact that he stood by and did not consult the plaintiff is no evidence of negligence on the part of the company.

4. In answer to our criticism concerning the instructions given, the defendant in error contends that the court cured the errors committed in its entire instructions. This, however, we deny; and say further, that there is no comparison between the case made by the instructions in this case and the case made by the instructions in the case of *City of Emporia v. Schmidling*, 33 Kas. 485, referred to in brief of defendant in error.

5. It seems to us that, inasmuch as this court has in all probability had occasion to examine and pass upon the questions growing out of the right to have special findings of fact made in common-law cases to a greater extent than any other court of its character in the United States, it was and is entirely useless to go to other states for light upon the simple questions raised in this case in relation thereto.

Counsel for defendant in error overlooked the fact that, in submitting the questions which were submitted to the jury for answer, we had the right to a correct answer from the evidence to each question submitted, either because we had a right to submit it, or because the court, in the exercise of its discretion, permitted the submission of such question, as it had the right to do. *S. K. Rly. Co. v. Walsh*, 45 Kas. 654.

Having been submitted to the jury under an instruction from the court that these questions and each of them must be as truthfully answered as the general verdict, we had and have the right to a new trial when the answers made show that the jury either willfully disregarded this instruction or paid no heed to it.

Counsel cite the case of *National Bank v. Peck*, 8 Kas. 660; but why we do not understand, as that decision was upon a statute that has since been repealed.

6. An attempt is made to answer our argument, that the verdict was excessive, and that it disclosed bias and prejudice on the part of the jury. There was not at the trial submitted to the court or jury any evidence whatever of any pain or suffering suffered by defendant in error, save and except only the evidence referred to in our brief. The plaintiff himself gave no evidence upon that point whatever. While both the court and the jury knew that he had necessarily suffered, yet neither the court nor jury could say to what extent, and that had to be proved like any other fact. The very question argued by counsel, as to how we knew what his suffering was, put the whole matter in a nutshell, as the answer is obvious, that we knew, just as the court and jury knew, from the evidence in the case. It makes no difference how many courts have sustained large verdicts, or in how many cases large verdicts are and have been sustained. It is just simply impossible for any one to read all the evidence there is in the record on the question of pain and suffering, and come to any other conclusion than that $5,000 damages for that item, with $7,230 for the loss of the leg, was and is not only excessive, but disclosed such a bias and prejudice as to compel the rejection of the entire verdict. Taking this in connection with the fact that the jury was willing and ready to and did give $770 as damages on a matter concerning which there was not the slightest proof in the world, and can any one believe that the general verdict, in its entire amount of $13,000, was free from the influence of passion and prejudice? If the jury awarded $770 upon no evidence at all, they did so under a determination to mulct the company, regardless of the evidence; and if they did so as to that item, can the verdict be considered as free from bias and prejudice in awarding $5,000 for pain and suffering, and in awarding $7,230 for the loss of the limb? See, in this connection, *A. T. & S. F. Rld. Co. v. Cone*, 37 Kas. 578.

7. In reply to the eleventh point, we have to say, that no question was made, either by the pleadings or the evidence, as to the incompetency of Boltz, or any knowledge on the part of the company of such incompetency, if any existed. An ingenious attempt is here made to throw the blame on the engineer. The only evidence that the engineer was given any instructions about verbal orders was the hearsay evidence related by plaintiff, which was flatly contradicted by the evidence of plaintiff's witness, Boltz, as to just what the conductor did do and say when he came back to where the brakeman and engineer were.

This case is a simple one if one understands it, and to our minds is one in which there is not the slightest liability on the part of the company. The accident occurred late at night. The head brakeman was stationed opposite the engine to communicate orders received by lamp from the conductor some 500 feet away. It was dark. There was another engine a thousand or more feet away in line with the brakeman and conductor, which was also being moved by lamps. The plaintiff below, knowing about both engines, and that all signals in the night-time in this yard were given by lamps, knowing that this car, while he was standing by it, was adjusted through a movement of the engine, controlled by signals given by the lamp, knowing that he had a right to have this engine cut off when under the car in the performance of his duty, goes under the car to perform his duty without having the engine cut off; the brakeman, watching for signals, sees a signal for the engine to move in the proper direction; the darkness prevents his adjusting the distance, and he in good faith believes that it is a signal to him, and having neither the time nor the opportunity to ascertain the actual truth, communicates it to the engineer, who moves the train, and the accident occurs. The plaintiff below, when he went under the car, knew of these lamps farther to the rear, and of the engine there being moved by them; and had just as good an opportunity to judge of the effect that might be pro-

duced by signals given around this switch engine, upon the brakeman in front, as any one else.

If there was negligence, whose negligence was it?

Opinion by STRANG, C.: Action for damages. During the night of August 14, 1888, a stock train on the plaintiff's road separated as it was pulling out of the yards of the city of Emporia. When the fact was discovered that a portion of the cars in the train had broken loose, the switch engine ran in behind the rear section and the two sections of the train were switched off the main track, the front section by the engine hauling the train, and the rear section by the switch engine, and run in on the south track, for the purpose of having them fastened together. In the meantime, the conductor of the train had notified Joe Wooten and the defendant, car repairers of the plaintiff at the Emporia yards, of the condition of the train, and they, with one James Dillon, a helper, secured a chain and went over to the train to tie the sections together. It was found that the draw-bar had pulled out of the front end of the head car of the rear section. Wooten fastened one end of the chain to the draw-bar of the rear end of the last car in the front section of the train, and passed the other end over the truck frame of the head end of the front car of the rear section to O'Neill, who was under the front end of said car, on the brake beam, to receive the chain from Wooten, put it around the center pin, and pass the end back to Wooten, that he might hook it between the cars, and thus tie them together. After Wooten passed the chain over to O'Neill, and while the latter was ·about to put it about the center pin, the train suddenly pulled ahead, catching O'Neill's left leg in the slack of the chain, and crushing it to such an extent that amputation below the knee became necessary.

The petition was filed March 16, 1889, claiming damages in the sum of $25,000. The company moved the court to require the plaintiff to make his petition more definite and certain. This motion was overruled. A demurrer was then filed

and overruled. On the trial, a general verdict was rendered for the plaintiff in the sum of $13,000. Special findings were made, in one of which the jury gave the plaintiff below the sum of $5,000 for pain and suffering; in another $7,230 for loss of limb, and $770 for loss of time. There being no evidence upon the subject of loss of time, the plaintiff below remitted the $770, and moved for a judgment for the balance. The defendant below moved for judgment on the special findings. The latter motion was overruled, and judgment was entered on the verdict for $12,230. Motion for new trial was overruled.

One of the alleged errors complained of by the plaintiff in error is the action of the court in refusing to require the plaintiff below to make his petition more definite and certain. The petition alleges that the plaintiff below was a car repairer, and that while under the car in the line of his duty, engaged in fastening two cars together, the locomotive engine attached to said cars violently and suddenly started forward, without notice or warning to him and against his orders, whereby his leg was caught in a chain with which he was trying to couple the cars together, and crushed so that amputation became necessary. The petition also alleged negligence, as follows:

"And this plaintiff avers that said injury occurred wholly without fault or negligence on his part, and wholly because of the gross carelessness and negligence of said defendant, its agents, and servants, and in violation of all proper rules and regulations for the management and handling of cars under such circumstances."

The following is the motion, omitting the caption, to make the petition more definite and certain:

"*First.* By setting forth and stating the facts fully as to whether the engine, which in plaintiff's petition is alleged to have violently and suddenly started forward, was so violently and suddenly started forward through the acts of any of defendant's employés, and by stating the facts as to whether or not said engine was by the effort or conduct of any of defendant's employés negligently started forward.

"*Second.* By setting forth every fact on which is based the

25—49 KAS.

statement that the injury occurred because of the gross care-lessness and negligence on the part of the defendant itself; by setting forth and stating the facts which constitute any gross carelessness or negligence on the part of the agents or servants, and by stating what agents or servants were guilty of gross carelessness and negligence, either by giving their names, or stating the position which they held and occupied in defendant's employ at the time of the accident.

" *Third.* By stating and setting forth all facts which would show any violation of all proper rules and regulations for the management and handling of cars under such circumstances ; by showing what rules and regulations were violated, setting the same out in substance or in full."

There is no direct allegation in the petition that the engine was started ahead, when the injury was done, by any of the agents or servants of the company, and no statement of facts showing by whom said engine was started ahead, nor by whose negligence, if by the negligence of any one, it was started.   It is true that the portion of the petition quoted alleges that the injury occurred wholly by reason of the gross careless-ness and negligence of said defendant, its agents or servants. In this case, if the company were guilty of any negligence, it was the negligence of its agents or servants, and it had a right to know, not only which of its agents was chargeable with negligence, but also what acts or omissions of such serv-ant or servants constituted the negligence complained of, so that its defense could be intelligently prepared with respect thereto.   It is difficult, if not impossible, to tell from the petition in this case to what servant or servants of the com-pany negligence is imputed.   It is also difficult to tell what act or omission of any of said servants constituted the negli-gence complained of.   Did the pleader intend to impute neg-ligence to the engineer or the brakeman, to the conductor or the yardmaster?   We are unable to say, except that perhaps the petition exonerates the conductor, who, under the evidence, seems to have been guilty of greater negligence than any other servant of the company.

It is alleged that the company was guilty of negligence in

violating all proper rules for the conduct of trains under the circumstances connected with the injury, but no rule is pointed out as having been violated, nor does the petition attempt to state what the misconduct of the company in this regard was. We think the petition too general, indefinite and uncertain as which of the company's agents or servants it imputes negligence to; as to what acts or omissions constitute the negligence complained of, as well as to what proper rules for the conduct of trains the company violated in connection with the injury. The petition was, therefore, subject to a motion to make it more definite and certain. The motion was made at a proper time. It clearly pointed out the defects of the petition, and fully and definitely showed in what manner it should be corrected. We are of the opinion, therefore, that the refusal of the court to require the plaintiff below to correct his petition was prejudicial error.

It is pretty clear that the plaintiff below had his limb crushed through the carelessness of some one. It looks to us from the evidence that the conductor, who evidently failed to do what he told O'Neill he would do, arrange with the engineer not to start the train except on a verbal order from him, was guilty of gross negligence. He not only promised O'Neill he would make such arrangement, but after going towards the front of the train and returning told him it was all right and was safe. It was on the strength of this statement that O'Neill went under the car. It is pretty clear, too, that the conductor did not go to the engineer to have any talk with him on the subject, but simply went to the front and told the brakeman to watch carefully for signals. As the error of the court in overruling the motion reverses the case, we will not consider the other assignments of error. It is recommended that the judgment of the trial court be reversed.

By the Court: It is so ordered.

All the Justices concurring.