MARY FELDKAMP v. THE CITY OF KANSAS CITY, KAN.

No. 13,475. (75 Pac. 464.)

SYLLABUS BY THE COURT.

1. CITIES AND CITY OFFICERS—*Defective Viaduct— Contributory Negligence.* A viaduct was in a condition that it was unsafe for teams and vehicles, but not for pedestrians. Its entrance was guarded by a barricade easily passed by pedestrians, and was passed by them in large numbers for a long time. Subsequently the viaduct became dangerous for the passage of persons on foot, but there was no additional warning of this changed condition given at the entrance. *Held*, that the court cannot say, as a matter of law, that the barricade was sufficient warning to charge with contributory negligence one who, without knowledge of the increased danger, went upon the viaduct and was injured.

2. ———— *Sufficiency of Warning a Question for the Jury.* The sufficiency of the barricade as a warning of the dangerous condition of the viaduct was, under all the circumstances, a question of fact, and should have been submitted to the jury.

Error from Wyandotte court of common pleas ; W. G. HOLT, judge. Opinion filed February 6, 1904. Reversed.

*Silas Porter*, and *I. F. Madlem*, for plaintiff in error.

*J. W. Dana*, and *M. J. Reitz*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : The plaintiff in error, who was plaintiff below, brought her action to recover from the city for the death of her husband, occasioned, as she alleged, by its negligence. The facts appearing in the evidence are substantially these : South James street is one of the principal public streets of Kansas City, Kan., running in a southeasterly direction through a populous district near the stock-yards, crossing the state line and extending into Kansas City, Mo. James street is crossed at a point near the state line between Kansas and Missouri by numer-

ous tracks of the Missouri Pacific Railway Company. To permit the free passage of travel along James street there had been erected over these tracks a viaduct some 3000 feet long, about 1800 feet of which was in Kansas City, Kan., and the balance in Kansas City, Mo. The viaduct crossed the state line at a sharp angle, so that the planks forming the roadway upon it where the line crossed were partly in Missouri and partly in Kansas. The roadway was about twenty-two feet wide and elevated about twenty-five feet above the tracks below. There were no separate ways for foot travel, but pedestrians and teams alike used the entire width.

In October, 1898, some 200 feet of the viaduct immediately over the railroad tracks was knocked down by a passing train and made impassable, in which condition it remained for some two years, during which time a barricade was erected and maintained at each end and travel of all kinds was entirely suspended. After the broken spans were restored in July, 1900, foot travel only was resumed, the floor in the Missoui portion not being in such a condition that it could be used with safety by teams. The barricade, which was still maintained, consisted of a stick of timber two inches by four inches, the ends lying upon the outside railings, supported in the center by a piece of the same dimensions and raised about four feet above the roadway. Large numbers of people came and went on foot across the viaduct, insomuch that different witnesses spoke of the stream of travel as being "many hundreds"; as being "a constant stream"; as being "so many that they could be seen walking over it at any time of day from morning until dark." Pedestrians coming to the barricade would stoop sufficiently to pass under it and otherwise give

it no attention.   It was thus used until September, 1901, when the authorities of Kansas City, Mo., preparatory to repairing that end, removed the planks at the Kansas end entirely, and thus, on account of the angle at which the viaduct crossed the state line, left an open triangular space west of the state line and in Kansas City, Kan.

While the plaintiff's husband had frequently used the viaduct in passing to and from his work during the year from July, 1900, he had not used it for some little time before the floor was torn up, as noted above, and did not know that the hole was there.   On October 6, 1901, about eight o'clock in the evening, he started to return home from his work, and for that purpose passed under the barricade at the Kansas end and went along the viaduct until he came to the place where the plank flooring had been removed.   It was dark and no lights had been provided, so that he was unaware of the dangerous conditions existing, ·and stepped into the open space and was precipitated upon the tracks below, causing an injury from which he died in a few weeks.   No other or different barricade had been erected or warning given after the planks had been removed and while the hole was there than had existed from the first—that is, some time in October, 1898.

At the close of the plaintiff's testimony, which developed the above facts, the court sustained the city's demurrer thereto, and gave judgment against the plaintiff for costs.   This is the ruling here complained of.

The plaintiff in error contends that the only question here presented is, Was the deceased guilty of contributory negligence in going upon the viaduct and not heeding the barricade?   The city claims that

31—68 KAN.

the barricade was such a notice to the public that its existence relieved the city from the duty of maintaining the viaduct in a safe condition for public travel; or, in other words, that the closing of the viaduct by the means used suspended the obligation of the city to keep the same safe for public travel during the time it was being repaired and until it should be re-opened by the city. There is little difference in these two statements. The city's claim assumes the sufficiency of the barricade as a notification to the traveling public of the defective condition of the viaduct. The plaintiff's statement questions this, or at least claims that the sufficiency of the barricade for that purpose is a question of fact to be submitted to the jury, and not one of law, as the trial court must necessarily have considered it to be, in that it withdrew the question from the consideration of the jury.

That the city was bound to guard the traveling public from the dangers incident to the leaving of the opening in the viaduct by a warning reasonably sufficient to notify the public of those dangers, there can be no question. In the absence of actual knowledge on the part of the deceased of the dangerous condition, it was the duty of the city to inform him of it by some means reasonably adequate to that end. A mark across the viaduct or a mere string laid upon the planks would hardly be deemed sufficient, while a tight fence which could not be overthrown or scaled might have been an extreme of precaution not required. Had the danger been slight the precaution to be observed with reference to the notice to the public might have been proportionately lessened. All of these questions are clearly questions of fact and appropriate for the consideration of the jury.

Again, the fact that this barricade had been disre-

garded for so long a time and by so large a number of
people and was so readily passed by pedestrians might
reasonably lead to the conclusion that the city knew
of such disregard by foot-passengers, and that it was
established solely for the purpose of preventing teams
from crossing, and was not intended as a warning to
those on foot.   This, evidently, was the view taken
by the plaintiff's husband, as well as by the public at
large.   The city, knowing this, as it must be pre-
sumed to have known from the extensive and long-
continued use made of the viaduct as a footway in
disregard of the comparatively slight warning given
by it, and when the danger was increased by the en-
tire removal of portions of the floor and the creation of
a death-trap, as it were, ought to have increased the
notification to the public of the increased danger, by
the erection of other additional and more effective
barricades or other warnings.   By long use, the slight
barricade four feet high, easily passed under, had
come to be regarded by foot-passengers as no notifica-
tion of danger whatever as to them.   By frequent
use of the viaduct it was found that there was no
danger in crossing it on foot prior to the tearing up of
the planks, leaving a hole there, through which the
plaintiff's husband was precipitated.   In many re-
spects the conditions were the same as in the case of
*Price v. Water Co.*, 58 Kan. 551, 50 Pac. 450, 62 Am. St.
Rep. 625, where a reservoir had been enclosed by a
fence, and it was claimed that that should have been
sufficient warning of the danger within.   Boys had,
however, habitually disregarded this warning and had
been permitted to play about the reservoir.   In that
case it was said :

   "Whatever merit such precautionary measures
might have under other circumstances, it is sufficient

to say that, in this case, they were not reasonably effective; because it was the daily habit of trespassing boys to mount the fence and frequent the reservoirs on the inside, and this habit was known to the company's responsible agent, and was not only tolerated but went unrebuked by him. Knowing the fence to be ineffective, either as a barrier or warning, it was the duty of the company to expel the intruders, or adopt other measures to avoid accident.

"Whatever advantage the defendant in error might have gained from the erection of a reasonably effective barrier or warning, is neutralized by the facts of its knowlege that the boys did trespass and its permission to them to do so."

In *Wetmore Township v. Chamberlain*, 64 Kan. 327, 67 Pac. 845, where it was claimed that a notice of the defective condition of a bridge and the sufficiency of a barrier upon the approach to a defective bridge should, as a matter of law, be held sufficient to give notice of the defective conditions thereof, this court said:

"Whether the warning and barriers were sufficient, was a matter for the determination of the jury; and for like reasons contributory negligence was a question for the jury under the instructions of the court. Under the testimony, a withdrawal of the case from the jury or an instruction in favor of the defendant would have been gross error."

We are of the opinion that this quotation fairly expresses the law applicable to this case. A barrier had been erected. Whether, under all the circumstances, it was sufficient to carry notice of defective conditions, is a question of fact which the court should have submitted to the jury.

It is further suggested by defendant in error that plaintiff's husband was guilty of such contributory negligence in disregarding this barrier and going un-

der it as to preclude recovery. This, of course, is but another presentation of the same question, which is one of fact for the jury.

A claim is also made that there was no evidence from which the jury might conclude that the place where the deceased fell was in Kansas City, Kan., rather than Kansas City, Mo. Upon this matter we disagree with defendant in error and find sufficient evidence in the record to justify the conclusion, had the jury reached it, that the place where he fell was in Kansas City, Kan.

We think the court was in error in sustaining the demurrer to the evidence, and the case will be reversed, and remanded for further proceedings.

All the Justices concurring.