Frank H. Price and Lillie E. Price v. The Atchison Water Company.

No. 10211.

1. NEGLIGENCE — *in water-works company not to guard against accidents to small boys permitted to resort to deep reservoir for amusement.* A water-works company, which maintains upon its grounds deep reservoirs of water attractive to small boys, who to its knowledge and with its permission resort thereto for fishing and for play, and which takes no reasonable precautions to prevent accidents to them while engaged in such amusements, is liable in damages if one of them, without negligence upon his part, falls in and is drowned.

2. ——— *whether intelligent boy guilty of, in resorting to such reservoir for amusement, question for jury.* The question whether a bright, intelligent boy eleven years of age, who was drowned in venturing to a deep and dangerous reservoir for fishing and for play, was negligent in so venturing, is for the determination of the jury and not the court.

3. ——— *alleged in only general terms, motion lies to make pleading more definite and certain.* A pleading containing only a general allegation of negligence is subject to a motion to make more definite and certain.

Error from Atchison District Court. Hon. W. D. Webb, Judge. Opinion filed October 9, 1897. *Reversed.*

*H. C. Solomon* and *Waggener, Horton & Orr,* for plaintiffs in error.

*B. F. Hudson,* for defendant in error.

DOSTER, C. J.    Melrose H. Price, the son of plaintiffs in error, a bright, intelligent boy of about eleven years of age, was drowned in one of the reservoirs of the defendant in error.    These reservoirs were two in number, and were situated in or near the corporate limits of the city of Atchison, in immediate proximity to a section of the residence portion of the city.  They were of unequal size ; one having a capacity of about 1,100,000 gallons, the other, about 3,000,000 gallons. The smaller one was used as a " settling basin," into which the water was pumped, and from whence it was discharged into the larger one through a pipe. The opening of this pipe into the larger basin was covered with an " apron," made of lumber, and designed to break the force of the water discharge and prevent injury to the walls of the reservoir.    It was partially buoyed by the water, and rose and fell as the water-supply increased or lessened.    For four feet from the top the walls of the smaller reservoir were perpendicular, and thence slanted to the bottom ; and its basin was about ten feet in depth in the deepest part.    The walls of the larger reservoir slanted at an angle of about forty-five degrees, and its basin had a depth in its lowest part of about fifteen feet.    It would be difficult, if not impossible, for a person falling into the larger basin to get out unaided, on account of the steepness of the walls.    These reservoirs and appurtenant grounds occupied about three acres, and were attractive places for children, many of whom frequented there for fishing and for other sports. They were inclosed with a barb-wire fence ten to

twelve wires high. There were two gates through the fence, which, however, were always kept closed, and two rudely constructed contrivances designed for stiles, but being, as described by some of the witnesses, "sheds," or large boxes, nailed to adjacent trees and inclosing most of the wires, but upon and over which it was not difficult for boys to climb from the outside. A watchman and custodian of these grounds was employed by the defendant. He was aware of the habit of the boys of the town to climb over the stiles, and permitted them to do so without objection. The boy, Melrose, without the consent or knowledge of his parents, went with some companions to the reservoirs in question to fish and play, and, venturing upon the apron before described, for the purpose of crossing from one part of the reservoir wall to another, the end which projected out upon the water sank, precipitating him into the basin, where he drowned. Immediately upon starting to go upon the apron, one of his companions called to him and warned him of the danger of so going, saying to him he might fall in. To this he replied "Oh, no!" His parents had frequently warned him of the danger of going to the reservoir, and he had trespassed there but once before, and then without their knowledge.

The plaintiffs in error sued to recover damages for the loss of their son, occasioned by the negligent maintenance of the reservoir and the negligence of the defendant in permitting him access to the dangerous situation described. The above statement summarizes the evidence for the plaintiff. To this evidence a demurrer for insufficiency to prove a cause of action was sustained. This action of the court is alleged as error, and is brought here for review.

The contention arising upon the above state of facts divides itself into two principal questions: *First*,

Was the defendant in error negligent, as to the deceased boy, in maintaining the dangerous reservoir? and, *second*, Was the deceased guilty of contributory negligence in venturing upon the slanting wall and projecting apron? These are questions of fact, and they should have been left to the jury for determination. They are not questions of law for decision by the court.

It is, however, contended by the defendant in error that, inasmuch as the deceased was a trespasser upon its grounds, it owed to him no duty to guard against the accident which occurred. Without doubt, the common law exempts the owner of private grounds 1. Water company from obligation to keep them in a safe negligent, when. condition for the benefit of trespassers, idlers, bare licensees, or others who go upon them, not by invitation, express or implied, but for pleasure or through curiosity. Cooley on Torts ( 2d ed.), 718 ; 1 Thompson on Negligence, 303 ; *Dobbins v. M. K. & T. Rly. Co.*, 41 S. W. Rep. 62. The common law, however, does not permit the owner of private grounds to keep thereon allurements to the natural instincts of human or animal kind, without taking reasonable precautions to insure the safety of such as may be thereby attracted to his premises. To maintain upon one's property enticements to the ignorant or unwary, is tantamount to an invitation to visit, and to inspect and enjoy ; and in such cases the obligation to endeavor to protect from the dangers of the seductive instrument or place follows as justly as though the invitation had been express. The rule collected out of the authorities is vigorously, but not too strongly, stated in 1 Thompson on Negligence, 304, 305 :

" There is also a class of cases which hold proprietors liable for injuries resulting to children although trespassing at the time, where, from the peculiar na-

ture and open and exposed position of the dangerous defect or agent, the owner should reasonably anticipate such an injury to flow therefrom as actually happened. In such case, the question of negligence is for the jury. It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed ; and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life. Such is not the law.''

The principle involved is the same as that upon which those actions known as the ''turn-table cases'' have been resolved, and in which it has been held, with few exceptions, that the maintenance, in an unguarded manner, of a dangerous apparatus for the shifting of locomotives, attractive to children residing or accustomed to playing near by, constitutes negligence upon the part of the companies. In one of these cases, it was quite well remarked by Mr. Justice Valentine :

'' Everybody knowing the nature and instincts common to all boys, must act accordingly. No person has a right to leave, even on his own land, dangerous machinery calculated to attract and entice boys to it, there to be injured, unless he first take proper steps to guard against all danger ; and any person who does thus leave dangerous machinery exposed, without first providing against all danger, is guilty of negligence. It is a violation of the beneficent maxim, *sic utere tuo ut alienum non lædas*. It is true that the boys in such cases are technically trespassers. But even trespassers have rights which cannot be ignored, as numerous cases which we might cite would show.'' *Kan. Cent. Rly. Co. v. Fitzsimmons*, 22 Kan. 691.

The reasons upon which these cases proceed, and the authorities supporting the rule, are strongly set forth in *Keffe v. The M. &. St. P. Rly. Co.*, 21 Minn. 207. They are, in brief, that, where a person maintains upon his premises anything dangerous to life or limb and of a nature to invite the intrusion of children, he owes them a duty of precaution against harm, and is liable to them for injury from that thing, even though their own act, if not negligent, puts in operation its hurtful agency. One may not bait his premises with some dangerous instrument or quality, alluring to the incautious or vagrant, and then deny responsibility for the consequences of following the natural instincts of curiosity or amusement aroused thereby, without taking reasonable precautions to guard against the accidents liable to ensue. Rights can only be enjoyed subject to those limitations which regard for the weaknesses and deficiencies of others dictate to be humane and just. This rule has been applied, not only in the "turn-table cases," but to others in which dangerous situations have been negligently maintained, and especially to cases of death or injury by falling into unguarded pools or vats of water. *Brinkley Car Co. v. Cooper*, 60 Ark. 545, 31 S. W. Rep. 154; *City of Pekin v. McMahon*, 154 Ill. 141.

Counsel for defendant in error endeavors to distinguish the "turn-table" and other like cases from the one under discussion, upon the ground that, in such first-mentioned cases, the dangerous instruments or places were not inclosed, so as to exclude or warn trespassers, while, in the present case, the reservoirs had been so fenced as to render access to them difficult, to say the least, and in any event to operate as notice to stay on the outside because of the dangerous situation within. Whatever merit such precautionary measures might have under other circumstances, it is

. sufficient to say that, in this case, they were not reasonably effective; because it was the daily habit of trespassing boys to mount the fence and frequent the reservoirs on the inside, and this habit was known to the Company's responsible agent, and was not only tolerated but went unrebuked by him. Knowing the fence to be ineffective either as barrier or warning, it was the duty of the Company to expel the intruders, or adopt other measures to avoid accident. Whatever advantage the defendant in error might have gained from the erection of a reasonably effective barrier or warning, is neutralized by the facts of its knowledge that the boys did trespass, and its permission to them to do so. It is as though no fence at all had been erected.

The second question, viz., the contributory negligence of the deceased, can be shortly disposed of. What might be negligence in an adult will not of necessity be negligence in a child. Persons of tender years are not held to the same degree of care that a mature and experienced person is required to exercise. As remarked in *Kan. Cent. Rly. Co. v. Fitzsimmons*, supra:

2. Whether boy negligent, question for jury.

"Boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own natures — instincts common to all boys. In many cases where men, or boys approaching manhood, would be held to be negligent, younger boys, and boys with less intelligence, would not be. And the question of negligence is in nearly all cases one of fact for the jury, whether the person charged with negligence is of full age or not.".

This view of the law we believe to be taken by all the courts. It has been recently entertained by us in other cases. *Kinchlow v. Midland Elevator Co.*, 57 Kan. 374; *Railway Co. v. Carlson*, ante, p. 62, 48 Pac. Rep. 635.                    —

The defendant in error made its plea of contributory negligence in the following language : "Further answering, defendant alleges that, if the plaintiffs have suffered any damage whatever, it is through and by reason of their own negligence in the premises, and that of said Melrose H. Price." The case did not progress far enough to require evidence under this plea.   Had it done so, the plaintiffs would have been uninformed as to the facts constituting the claim of negligence upon the part either of themselves or of the deceased boy.   A motion by plaintiffs in error to require this answer to be made more definite and certain was made and overruled.   It should have been sustained.   The rule is the same in the case of an answer as it is in the case of a petition charging negligence.   As to the latter it has been held :

3. Motion lies to make pleading more definite.

"If a petition contains but a general allegation of negligence, it is subject to a motion requiring it to be made more definite and certain, and it is error for the court to overrule a proper motion presented for that purpose."   *O'Neill A. T. & S. F. Rld. Co.*, 49 Kan. 367.

The case is reversed, with instructions to award a new trial and to sustain the motion to make the answer more definite and certain.