No. 39,780

Nellie M. Smith, as mother and next of kin of Orson T. Robinson, Jr., a minor, deceased, *Appellee*, v. Mary Darlington Cooper Evans, Rebekah Blackwood Cooper Rounds and Donald Jerome Wilson Cooper, *Appellants*.

(284 P. 2d 1065)

Opinion filed June 11, 1955.

*Richard W. Stavely*, of Wichita, argued the cause and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Ralph M. Hope* and *Charles S. Lindberg*, all of Wichita, were with him on the briefs for the appellants.

*Kurt Riesen*, of Wichita, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for the death of plaintiff's son by drowning. The appeal is from an order overruling defendants' demurrer to plaintiff's petition.

The petition first alleged the relationship of the parties and that plaintiff's son was thirteen years of age at the time of his death. It then alleged that at a point described, in Wichita, the defendants owned a plat of real estate, upon which there was an abandoned sand pit about five acres in extent. Its technical description was then given. The petition then alleged that at all times prior to June 3, 1953, this pit was permitted to exist in a dangerous and hazardous condition; that it was unfenced and had no warning signs; that it was not open to the public; that the water in the pit was clear, deep and particularly inviting to fishermen and swimmers and great numbers of persons, young and old, frequented the area; that prior to June 3, 1953, some party, unknown to plaintiff, had erected a wooden diving board on the bank beside a deep

hole in the sand pit at the north and west portion thereof; that defendants knew, or should have known, of the existence of this diving board and its attractiveness to youthful swimmers; that despite this, defendants permitted the diving board to remain in place; that about the 3rd day of June, the plaintiff's son along with several other children of comparable ages went swimming in this sand pit; that they swam to the deep end and dived off the diving board and in some manner unknown to plaintiff her son was drowned therein; that the dangerous and negligent condition of the property, particularly the sand pit, was known, or should have been known to the defendants; that complaints regarding the condition of the premises had been made by the residents of the area and publicity had been given it by the local newspapers; that defendants knew, or should have known, that children frequented the place and the premises were dangerous and unusually attractive to children, particularly in view of the fact that defendants permitted the existence of the diving board; that the danger to children coming on the premises could and should have been prevented by fencing or patrolling the premises, erecting warning signs and removing the attractive diving board mentioned, and such failure resulted in the plaintiff's son's untimely death. Judgment was asked in the amount of $15,000.

Defendants demurred to this petition on the ground it failed to state facts sufficient to constitute a cause of action. This demurrer was overruled—hence this appeal.

All parties concede this is what is known as an attractive nuisance case. The doctrine came into the law, it is conceded by both parties, from what is known as the turn-table cases. The defendants cite a number of cases where we have held that lakes and ponds in and of themselves did not constitute an attractive nuisance so as to make the defendants liable. The plaintiff points out these cases cover ordinary water hazards where no unusual danger or no unusual feature was present to lure children. Some jurisdictions do not recognize the doctrine at all. Kansas has always recognized it. However, we have construed it carefully as various cases have been presented to us. In this regard considerable emphasis is placed upon the presence at this abandoned sand pit of a diving board. Whether it had been erected by defendants or by somebody who came there to swim, the petition alleged that defendants knew of its being there for a considerable time.

In *Price v. Water Co.*, 58 Kan. 551, 50 Pac. 450, we considered a

case where the waterworks company maintained upon its ground a deep reservoir. A smaller reservoir was used as a "settling basin" into which the water was pumped and from which it was discharged into the larger one through a pipe. The opening of this pipe into the larger basin was provided with an "apron" made of lumber which rose and fell with the water in the pit and against which the water in the pipe would dash, preventing the walls of the reservoir being damaged. The custodian of the grounds maintained by defendant was aware of the boys of the town using this apron as a means of diving into the pool. One boy, without the consent or knowledge of his parents, went with some companions to the reservoir to fish and play and venturing upon the apron for the purpose of crossing from one part of the reservoir wall to another, the end which projected out upon the water sank precipitating him into the basin, where he was drowned. The trial court held the defendant liable. On appeal the water company argued that inasmuch as the deceased was a trespasser upon these grounds when the accident occurred it was not liable. We, in considering this argument, put the case squarely upon the turn-table doctrine. We said:

"They are, in brief, that, where a person maintains upon his premises anything dangerous to life or limb and of a nature to invite the intrusion of children, he owes them a duty of precaution against harm, and is liable to them for injury from that thing, even though their own act, if not negligent, puts in operation its hurtful agency. One may not bait his premises with some dangerous instrument or quality, alluring to the incautious or vagrant, and then deny responsibility for the consequences of following the natural instincts of curiosity or amusement aroused thereby, without taking reasonable precautions to guard against the accidents liable to ensue. Rights can only be enjoyed subject to those limitations which regard for the weaknesses and deficiencies of others dictate to be humane and just. This rule has been applied, not only in the 'turn-table cases,' but to others in which dangerous situations have been negligently maintained, and especially to cases of death or injury by falling into unguarded pools or vats of water."

The presence of the wooden apron was undoubtedly a factor in holding these defendants liable.

*Kansas City v. Siese*, 71 Kan. 283, 80 Pac. 626, was a case against the city of Kansas City for the death of a child by drowning. The city had permitted water to accumulate to form a pond from thirteen to twenty feet deep in some places. The city had constructed a sewer over the surface of the water by driving a series of piles through the pond upon which a trough holding the pipe in place was constructed. This pond was situated in a thickly settled resi-

dence portion of the city and had been resorted to by the boys of the city for swimming and fishing. The structure used for the carrying of the sewer pipe was an attractive and easily utilized means of enabling them to get out to the deeper portions of the pond. These small boys were in the habit of jumping from this sewer pipe into the deeper portions and the plaintiff's son was doing likewise. He jumped in the deep water and was drowned. There was a demurrer to the petition. The city argued, the allegations did not bring the case within the doctrine of the so-called turn-table cases. We referred to *Price v. Water Co.,* supra, and held the city liable. There the unusual feature was the pond and the sewer pipe that extended across the surface. This was an invitation for boys to go there and jump therefrom. *Electric-light Co. v. Healy,* 65 Kan. 798, 70 Pac. 884, was cited. That was a case where an electric light company was given permission to carry its electric wires on a viaduct of a city street close to a traveled road. Between these wires and the traveled road was a railing upon which small boys were in the habit of climbing and getting close to the wires. The wires were not insulated and plaintiff's son came in contact with them and was killed. We placed the case within the attractive nuisance doctrine and held the company liable. This was not a swimming pool case. It did, however, cite and follow the case of *Price v. Water Co.,* supra.

In *Somerfield v. Power Co.,* 93 Kan. 762, 145 Pac. 893, we had a case where the defendant maintained an open and unguarded canal with perpendicular banks about thirteen feet high and carrying a stream of water from six to eight feet deep, operated through the corporate limits of a populous city for commercial purposes, and plaintiffs' son fell into this canal and was drowned. In holding the company not liable we pointed out that there was no attractive or dangerous structure which would imperil the lives of the children attracted there to play upon it as in the case of the water company. Thus we recognized the rule for liability in the case of a swimming pool where some unusual device is erected.

The defendants cite authorities from other jurisdictions holding there was no liability. We have examined them. Many do not recognize the turn-table doctrine at all. Others are cases upon which there was no such a structure as the "apron" as in the case of *Price v. Water Co.,* supra, and the sewer pipe case, *Kansas City v. Siese,* supra. The allegations must be construed liberally in favor

of the contentions of the plaintiff. We have examined the facts alleged in this petition and conclude the demurrer was properly overruled.

The judgment of the trial court is affirmed.

HARVEY, C. J., THIELE and PRICE, JJ., dissent.