No. 40,012

John T. Galleher and Ruth Galleher, *Appellants*, v. City of Wichita; Mary Evans; Rebekah Rounds; Ralph Rounds and Donald Cooper, *Appellees.*

(296 P. 2d 1062)

Opinion filed May 5, 1956.

*C. H. Morris,* of Wichita, argued the cause, and *Robert F. Bailey* and *Willard J. Kiser, Jr.,* both of Wichita, were with him on the briefs for appellants.

*Douglas E. Shay,* of Wichita, argued the cause, and *Fred W. Aley,* of Wichita, was with him on the briefs for appellee City of Wichita. *Richard W. Stavely,* of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Ralph M. Hope* and *Charles S. Lindberg,* all of Wichita, were with him on the briefs for appellees Mary Evans, Rebekah Rounds, Ralph Rounds and Donald Cooper.

The opinion of the court was delivered by

Fatzer, J.: This was an action for the wrongful death of a five-

year-old boy. The demurrers of all defendants to plaintiffs' amended petition were sustained. Plaintiffs have appealed.

The amended petition alleged that plaintiffs are the parents and heirs at law of Lonny Eugene Galleher, and that Lonny Eugene died of drowning on the 19th day of October, 1953, through the negligence of the defendants; that defendant city is a city of the first class and that defendants Mary Darlington Cooper Evans, Rebekah Blackwood Cooper Rounds, Ralph Rounds and Donald Jerome Wilson Cooper, hereinafter referred to collectively as Cooper, owned a plot of real estate within the city of Wichita upon which existed an abandoned sand pit, the location of which was set forth by legal description; that on the 13th day of October, 1953, defendant city entered into a written agreement with Cooper concerning the use and control of the property upon which the abandoned sand pit was located, a copy of which was made a part thereof.

In a summary way the agreement provided that defendant city desired to use certain portions, and to *acquire* certain other portions of the property owned by Cooper; that the east side of the tract of land, described in the petition and in the contract, paralleled the right or west bank of the Arkansas River, extending north and south from Central Avenue to Ninth Street and varied in distance from east to west; that Cooper agreed to *immediately deed* to defendant city for street purposes and to stabilize and protect the right bank of the river, a strip of land parallel thereto and 200 feet in width between Central Avenue and Ninth Street, the title of which was to revert to Cooper if and when abandoned; that Cooper was to immediately dedicate to the public for street purposes certain footage and to grant to defendant city the right to dump trash and miscellaneous debris in the sand pit under certain conditions and limitations, one of which was defendant city would be in charge of all dumping operations; that Cooper and private citizens of the city could use the dump under the general supervision of defendant city; that defendant city would erect as soon as practicable a fence around the pit and endeavor to keep out all trespassers; that defendant city was not required to fill the pit but at all times was to operate the dump in such a manner as not to constitute a public nuisance. For present purposes, the contract need not be further summarized.

The amended petition further alleged that said sand pit or pond was an artificial man-made excavation having been created by

and under the direction of Cooper for profit by leasing said real property to Builders Sand Company to pump and remove sand therefrom for commercial building and construction purposes; that said pumping operations were carried on for at least five years prior to October 13, 1953, with the knowledge of defendant city; that some months prior to October 13, 1953, the Builders Sand Company suspended pumping sand from said premises and with the knowledge of both defendants cut through the right established bank of the Arkansas River and moved its sand pump equipment from said excavation into the Arkansas River, abandoning said excavation, and the cut in the right bank of the river was not repaired; that as a result thereof the current of the river flowed through the opening into the excavation causing it to be filled with water and caused the impounded water to have treacherous water currents, which endangered the lives of any persons entering said water, that the particular portion of the excavation where Lonny Eugene met his death was a part of the premises parallel to the bank of the river which was *acquired* by defendant city on the 13th day of October, 1953, to stabilize and protect the bank of the river and for street and boulevard purposes.

The amended petition further alleged that for a long period of time prior to October 19, 1953, the abandoned artificial excavation was surrounded with steep, shifting sandbanks, with here and there a sand beach, which were particularly attractive and alluring to children to play on; that the water in the sand pit was clear, deep and cool, with hidden uneven bottom and hidden water currents beneath the surface, which were dangerous to the life of any person entering the water, and particularly Lonny Eugene; that the water abounded with fish and was attractive and inviting to children as a place to fish and swim and because the surface of the water was placid it did not disclose its depth or its treacherous currents; that the abandoned excavation was situated within a densely populated section of defendant city made up of small dwellings and small tracts of land; that the children in the vicinity were afforded few adequate places to play, as a result of which the neighborhood children used the abandoned excavation, its sandbanks, beaches and water as a place to play, fish and swim; that a considerable time prior to October 19, 1953, persons unknown to plaintiffs erected a wooden diving board on the bank of said excavation beside a deep hole at the *north* and *west* portion thereof and

that both defendants knew of the existence of said diving board; that the existing dangers alleged and the use of the premises by trespassing children, and especially Lonny Eugene, could and should have been prevented by the defendants in the exercise of due caution by fencing or patroling said premises, by erecting warning signs as to the depth, dangerous undercurrents and shifting sandbanks and uneven bottom of said pit and by removing the diving board; that the failure to protect young children, and particularly Lonny Eugene, was the direct and proximate cause of his death.

The amended petition further alleged that the condition of said property, and the children playing in and about said property, had existed for at least four years prior to October, 1953, and that defendants had knowledge of such condition; that written notice was given to defendant city of the dangerous condition on April 30, 1949, and again on July 21, 1951; that in the four years prior to October, 1953, members of the city commission, officers, agents and employees of defendant city had from time to time actually viewed said premises, and approximately a week prior to the death of Lonny Eugene defendant city had voted to order that said pit be filled in, but no actual work had been performed by said defendant city or by Cooper to carry out said order or prohibit children from frequenting the premises, and that Cooper had notice and knowledge of the dangerous condition of said premises because the written notices to defendant city were made an issue at public hearings before its city governing body and were widely publicized in two metropolitan newspapers published and distributed throughout the city of Wichita and to the homes of Cooper.

The amended petition further alleged that defendants failed and neglected to take any action to abate the dangerous condition existing on the premises or to fence or guard the same or to take other measures to keep children from going upon said premises; that defendant city had knowledge that Cooper had refused to take action to make said premises safe or in lieu thereof, to guard and protect the premises from the use of children; that it had failed and refused to take legal action pursuant to G. S. 1949, 13-1417 to abate or prevent the nuisance existing on said premises or order Cooper to make the premises safe for children to play upon or in lieu thereof, to prohibit children from using the same as a place to play, swim and fish; that after the execution of the contract of

October 13, 1953, defendant city took no action to immediately erect a fence around said pond or pit, or to post a guard to keep out trespassing children who it knew frequented said premises; that the conditions and situations on said premises were dangerous to the life and health of all children who habitually frequented said premises, and particularly to Lonny Eugene, and constituted an attractive nuisance known to both defendants.

The amended petition further alleged that on the afternoon of October 19, 1953, Lonny Eugene and his three-year-old brother went to visit a four-year-old cousin whose home was only a short distance from the premises upon which the sand pit was located; that the three boys proceeded to the property of defendants to play at fishing with a piece of rope; that they played around the banks and water's edge of the pond and while playing at a point on the *northeast* bank of said pond "Lonny Eugene, in an effort to retrieve the rope with which the boys had been playing, from the water, waded into what appeared to be shallow water along the edge of the bank and in doing so stepped off into water over his head, and because of his tender years was unable to swim or in any other manner extricate himself from the deep water and drowned." That, because of his youthful age and lack of experience Lonny Eugene did not know or could not be expected to know or observe the hidden and latent dangers of the uneven depth of the water and undercurrent of water and all other dangers existing; that the inviting calmness of the surface water constituted an unseen and unobservable danger to Lonny Eugene, which directly contributed to his death.

The amended petition further alleged damages to the parents for the loss of their son, and the making of a claim to the city and its disallowance; that the action was brought by plaintiffs as next of kin to decedent, and that no personal representative had been appointed for Lonny Eugene.

To this amended petition defendant city and Cooper demurred on the grounds that it did not state facts sufficient to constitute a cause of action. The demurrers were sustained—hence this appeal.

Defendant city first contends its demurrer was correctly sustained because it did not create or maintain the dangerous place alleged to exist, and that it was not liable for the negligence of its officials in failing to enjoin or abate such nuisance.

The record is clear that defendant city did not create or maintain

the dangerous place alleged to exist. It is also clear the officials of defendant city did not institute proceedings under G. S. 1949, 13-1417 to enjoin or abate the nuisance which was alleged to exist, notwithstanding repeated visits to the premises, by city officials, members of the fire and police department, repeated notices it received, and a public hearing before the city commission concerning such notices, which hearing was publicized in metropolitan newspapers distributed throughout the city.

In examining this contention we refer to G. S. 1949, 13-1417, which reads:

"Any city *may* bring an action to enjoin and abate or prevent any nuisance that exists or is about to be created within the city or within three miles of its corporate limits." (Emphasis supplied.)

At the outset, we note the statute is authoritative and not mandatory in character. The authority to act is not alone the legal equivalent of a command to act. (*Perry v. City of Wichita*, 174 Kan. 264, 270, 255 P. 2d 667.) The dangerous condition which was alleged to exist was not created by defendant city; the fault, as alleged in the amended petition, consisted in the failure to take affirmative action under G. S. 1949, 13-1417, to abate a nuisance then existing. Where a municipality does not create the condition resulting in a nuisance, its failure to exercise its power to abate the nuisance does not render it liable for injuries sustained therefrom. This rule is supported by the following authorities: *Everly v. City of Gas*, 95 Kan. 305, 147 Pac. 1134; *Kretchmar v. City of Atchison*, 133 Kan. 198, 299 Pac. 621; and, *Rhodes v. City of Kansas City*, 167 Kan. 719, 722, 723, 208 P. 2d 275. The distinction between nuisance to which governmental immunity does not attach and negligence as to which it is available, turns upon whether the condition was one created by the municipality itself or was one otherwise created or occurring which the municipality has failed to use the requisite care in remedying. (*Rhodes v. City of Kansas City*, supra; 38 Am. Jur. § 651, Municipal Corporations, p. 360; and, 75 A. L. R. 1196, 1204.)

Defendant city's second contention may be summarily stated: that the attractive nuisance doctrine is based upon dangers created by the act of the owner or proprietor, and since the city did not own or have control of the premises upon which the dangerous place was alleged to exist, it was not liable for the death of Lonny Eugene.

The record is not clear with respect to the city's control of the

premises upon which the sand pit was located. The amended petition alleges that the premises upon which the sand pit existed "was a part of the premises parallel to the established right bank of the Big Arkansas River, which strip of land was *acquired* by the city of Wichita on the 13th day of October, 1953, for the purpose of stabilizing and protecting the right bank of the Arkansas River and for street and boulevard purposes." (Emphasis supplied.) Bearing in mind that Lonny Eugene's death occurred on the 19th day of October, 1953, we examine the contract alleged to have been entered into by defendant city and Cooper on the 13th day of October, 1953. It provides that, "Cooper agrees to *immediately deed* to the city for street purposes and for the purpose of stabilizing and protecting the right bank of the Arkansas River, a strip of land parallel to the established right bank of said river and two hundred (200) feet in width . . ." (Emphasis supplied.) The allegations of the amended petition that the city acquired the premises upon which the sand pit was located cannot contradict the recital in the contract that a deed was to be executed when it is not alleged that Cooper executed a deed to defendant city to carry out the purposes of the contract.

In *State, ex rel., v. Hedrick,* 178 Kan. 135, 139, 283 P. 2d 437, the court said:

". . . While a pleading is usually to be liberally construed in favor of the pleader, the whole of it must be considered and where the pleader attaches to his pleading a written instrument on which his allegation rests, he cannot plead at variance with the terms of that instrument or not justified by it."

See, also, *Wood v. Stewart,* 158 Kan. 729, 150 P. 2d 331; *Zane v. International Hod Carriers B. & C. L. Union,* 155 Kan. 87, 122 P. 2d 715; *Sharp v. McColm,* 79 Kan. 772, 101 Pac. 659; and, *Croasdale v. Butell,* 177 Kan. 487, 280 P. 2d 593.

Giving the allegations of the amended petition their most liberal construction in favor of plaintiffs, we conclude that, so far as the record discloses, Cooper owned the premises upon which the sand pit existed on the date of Lonny Eugene's death. This being true, can defendant city be held liable under the attractive nuisance doctrine? We think not.

In *Tavis v. Kansas City,* 89 Kan. 547, 132 Pac. 185, two boys were drowned in a pool in a creek immediately below a culvert which the city had constructed in a street and across the creek, and it was claimed that the opening in the culvert for the passage of

water was too small; that in times of heavy rain the water in the creek was held back by the culvert and forced through the opening in such a way as to make a pool in the creek below the culvert; that the place was attractive to boys who frequently went to the pool to wade and swim and that as it was unfenced and unguarded, the city, under the attractive nuisance doctrine, was responsible for the drowning of the boys and liable for the loss sustained by their parents. The land where the pool was formed was the property of a private owner and over which the city had no control. We held that the city was not liable for the loss sustained by the parents in the drowning of their sons since the city had neither ownership, nor control over the premises upon which the dangerous place existed.

Giving all the allegations of the amended petition their most favorable and liberal construction in favor of plaintiffs, we conclude defendant city's demurrer to the amended petition was correctly sustained.

Since we have concluded that the demurrer of defendant city was properly sustained, let us examine to see whether a different rule should prevail as to the demurrer of Cooper.

The parties concede this is what is known as an attractive nuisance case. The attractive nuisance doctrine was first recognized by this court many years ago and it has been reapplied numerous times. It has become a part of our jurisprudence. The statement of the doctrine by Chief Justice Johnston summarizes the basis of its application in our various decisions when he said in *Tavis v. Kansas City*, supra:

". . . The rule of the attractive nuisance cases has been recognized and frequently applied in this state (*Osborn v. Railway Co.*, 86 Kan. 440, 121 Pac. 364, and cases cited), but it is based on the negligence of the proprietor who fails to protect young children attracted to his premises by some dangerous thing or place artificially created there and where he should have anticipated that the children would be lured into the danger. . . ."

A few of our cases in which the purport of this rule was applied are: *K. C. Rly. Co. v. Fitzsimmons*, 22 Kan. 686; *C. K. & W. Rld. Co. v. Bockoven*, 53 Kan. 279, 36 Pac. 322; *Kinchlow v. Elevator Co.*, 57 Kan. 374, 46 Pac. 703; *Price v. Water Co.*, 58 Kan. 551, 50 Pac. 450; *Biggs v. Wire Co.*, 60 Kan. 217, 56 Pac. 4; *Electric-light Co. v. Healy*, 65 Kan. 798, 70 Pac. 884; *Kansas City, Fort Scott & Memphis Rld. Co., v. Matson*, 68 Kan. 815, 75 Pac. 503; *Kansas City v. Siese*, 71 Kan. 283, 80 Pac 626; *Osborn v. Railway Co.*, 86 Kan.

440, 121 Pac. 364; *Roman v. City of Leavenworth,* 90 Kan. 379, 133 Pac. 551; *id.* 95 Kan. 513, 148 Pac. 746; and, *Smith v. Evans,* 178 Kan. 259, 284 P. 2d 1065.

In *Tavis v. Kansas City,* supra, p. 553, Chief Justice Johnston quoted with approval from *Peters v. Bowman,* 115 Cal. 345, 47 Pac. 113, 598, the following:

" 'The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different.' "

This statement was approved and again quoted in *Harper v. City of Topeka,* 92 Kan. 11, 139 Pac. 1018.

In *Kinchlow v. Elevator Co.,* supra, it was held:

"Where an owner of premises has reason to apprehend danger from the peculiar situation and condition of certain of their appurtenances and their openness to accident, the question whether he has exercised due care or not, as well as that of the contributory negligence of a person injured thereon, becomes one for the jury, to be determined upon all the facts and circumstances of the case."

In *Price v. Water Co.,* supra, p. 556, the court said:

". . . They are, in brief, that, where a person maintains upon his premises anything dangerous to life or limb and of a nature to invite the intrusion of children, he owes them a duty of precaution against harm, and is liable to them for injury from that thing, even though their own act, if not negligent, puts in operation its hurtful agency. One may not bait his premises with some dangerous instrument or quality, alluring to the incautious or vagrant, and then deny responsibility for the consequences of following the natural instincts of curiosity or amusement aroused thereby, without taking reasonable precautions to guard against the accidents liable to ensue. Rights can only be enjoyed subject to those limitations which regard for the weaknesses and deficiencies of others dictate to be humane and just. This rule has been applied, not only in the 'turntable cases,' but to others in which dangerous situations have been negligently maintained, *and especially to cases of death or injury by falling into unguarded pools or vats of water.*" (Emphasis supplied.)

We have held that a swimming pool in a public park of a city, although attractive to children, was not a nuisance, producing public annoyance, inconvenience, discomfort or hurt, since it formed one of the public attractions in the park and did not belong in the same class with places regarded as an attractive nuisance (*Gilliland v. City of Topeka,* 124 Kan. 726, 262 Pac. 493; *Warren v. City of Topeka,* 125 Kan. 524, 265 Pac. 78); that a pond in a city park which was substantially a reproduction of a natural pond, although attractive to children, did not come within the rule of attractive nuisance since the maintenance of the park was a governmental function, and the pond in the park added to its beauty and accessory to all (*Harper v. City of Topeka,* supra); that an artificial channel and tunnel designed to correct the evil tendencies of a natural stream in a city was not within the doctrine of attractive nuisance (*Gorman v. City of Rosedale,* 118 Kan. 20, 234 Pac. 53); that an unguarded pool in a natural watercourse to which boys resorted to wade and swim could not be regarded as an attractive nuisance (the Tavis case, *supra*); and, that an open and unguarded canal fifty feet in width carrying a stream of water about seven feet deep through a populous city for commercial purposes was not an attractive nuisance, since it was in the nature of a natural watercourse although obviously dangerous and attractive to children, and there was no greater necessity to build a fence or cover the canal than to fence or cover a natural stream (*Somerfield v. Power Co.,* 93 Kan. 762, 145 Pac. 893).

We do not think that because Builders Sand Company with the permission of Cooper cut through the right established bank of the river thereby causing the abandoned sand pit to fill with water and be subject to the currents of the river brings the dangerous place alleged to exist under the rule announced in *Harper v. City of Topeka,* supra; *Gorman v. City of Rosedale,* supra; the Tavis case, *supra,* or *Somerfield v. Power Company,* supra, since Cooper created the unnatural condition.

With these rules in mind we examine the allegations of the amended petition to ascertain whether Cooper's demurrer was correctly sustained, conceding that not every unguarded pond might come within them. In doing this, however, we keep in mind the general rule that as against a demurrer, the plaintiff is entitled not only to all the benefits of facts pleaded but to all reasonable inferences that may be derived therefrom (*Rowell v. City of Wichita,*

162 Kan. 294, 300, 176 P. 2d 590); that allegations well pleaded must be accepted as true (*Hodges v. Phoenix Mutual Life Ins. Co.*, 171 Kan. 364, 233 P. 2d 501).

For five years prior to Lonny Eugene's death, Cooper caused the sand pit to be created and enlarged. Apparently when all the sand on the premises had become exhausted, Cooper permitted the sand company to cut through the right bank of the river for the purpose of moving its equipment from the premises, thereby causing the sand pit to fill with water and to be subjected to the currents of the river. In the process of taking sand from the premises, steep, shifting sandbanks as well as sand beaches were formed, which were attractive to children to play upon. The water which filled the sand pit was clear, deep and cool, and had hidden currents beneath its surface, which abounded with fish and was attractive and inviting as a place to fish and swim. Its attractiveness to children cannot be questioned.

Cooper's premises were located in the city of Wichita and within a densely populated section of the city. Surrounding it were many small dwellings on small tracts of land. The children of these homes had few adequate places to play, and as a result they used the sand pit area, its sandbanks, beaches and water as their playground. While there was a wooden diving board at the *northwest* edge of the bank of the sand pit, it was not incidental in Lonny Eugene's drowning, which occurred near the *northeast* portion of the pond.

That Cooper knew young children were attracted to these premises and should have anticipated they would be lured into danger cannot be questioned. Notices were served upon the city's governing body protesting the condition of Cooper's premises. As a result of these notices, the premises were visited from time to time by city officials, members of the police and fire departments for the purpose of viewing them. The condition of Cooper's premises was made a matter of public issue; a public hearing concerning it was publicized in two metropolitan newspapers having general circulation throughout the city and to the Cooper homes. This, and other facts alleged, leaves little doubt that Cooper was aware of the condition of these premises and the use made of them by children in the neighborhood. Assuming that Cooper could not with comparative ease prevent danger occurring to children without destroying or impairing the usefulness of the sand pit during the time it was in operation, certainly, after the sand company moved its equipment

from the sand pit and ceased its operation there was nothing to prevent Cooper, in the exercise of ordinary care to protect children who came upon the premises, from fencing the area, posting notices of danger or taking other measures to render the premises safe. Their nature made them easily guarded.

While, as pointed out in *Smith v. Evans,* supra, emphasis was placed upon the presence of the diving board at the abandoned sand pit we conclude here, under the allegations of the amended petition, it was the abandoned sand pit and its entire surroundings; its smooth beaches, sandbanks, the placid water, which, all combined, formed the dangerous whole and made it an attractive nuisance under the rule set forth in the Tavis case, *supra.*

At the oral argument of this case it was stated by appellants, and not denied by appellees, that this is the same premises about which litigation occurred in the case of *Smith v. Evans,* supra, to recover damages for the death of plaintiff's son by drowning, which occurred June 13, 1953; some four months previous to Lonny Eugene's death.

Counsel for Cooper cite authorities from other jurisdictions holding there was no liability. We have examined them. We do not think they apply in determining whether the amended petition states a cause of action under the rule set forth in the Tavis case, *supra.* The allegations must be taken as true and the plaintiffs are entitled to a liberal construction and the indulgence of reasonable inferences. We think the amended petition states a cause of action against Cooper, and the trial court erred when it sustained the demurrer.

The judgment of the trial court is affirmed in sustaining defendant city's demurrer; the case is reversed with directions to the trial court to overrule the Cooper demurrer. It is so ordered.

PRICE, J., dissents from (2) of paragraph 4 of the syllabus and the corresponding portion of the opinion.