**John O. MOZIER, Jr. and Nancy G. Mozier, Plaintiffs,**

v.

**Charles PARSONS and Brenda Parsons, Defendants.**

**John O. MOZIER, Sr., as Special Administrator of the estate of Emily Elise Mozier, deceased, Plaintiff,**

v.

**Charles PARSONS and Brenda Parsons, Defendants.**

Civ. A. Nos. 93–2158–GTV, 93–2159–GTV.

United States District Court, D. Kansas.

April 7, 1994.

Order Certifying Question May 18, 1994.

Mark C. Owens, Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, KS, Peter A. Martin, Redstone, CO, for plaintiffs.

Zackery E. Reynolds, Fort Scott, KS, for Charles Parsons, Brenda Parsons.

John H. Mitchelson, Wheeler & Mitchelson, Chtd., Pittsburg, KS, for Bauman Pool and Spa Inc.

James L. Sanders, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, for Stephen Howell, State Farm Fire & Cas. Co.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

These are wrongful death and survival actions in which plaintiffs seek recovery for the injury and death of three-and-one-half-year old Emily Mozier, who drowned in defendants' swimming pool. These consolidated cases are before the court on defendants' motion for summary judgment (Doc. 48). For the reasons set forth below, the motion is denied.

### I. Relevant Facts

Plaintiffs John O. Mozier, Jr. and Nancy G. Mozier are the parents of the decedent, Emily Mozier. They are Missouri citizens, as was Emily at the time of her death. Nancy G. Mozier is the sister of defendant Charles Parsons. John O. Mozier, Sr. is the duly appointed and acting Special Administrator of Emily's estate by reason of Letters of Administration issued by the District Court of Johnson County, Kansas. Defendants are citizens and residents of Kansas, and this court has jurisdiction pursuant to 28 U.S.C. § 1332.

This accident occurred at the Parsons' home near Fort Scott, Kansas, and the parties agree that Kansas substantive law is to be applied. Emily's parents have brought their action for wrongful death pursuant to K.S.A. § 60–1901, *et seq.* The administrator seeks to recover for Emily's estate damages related to conscious pain and suffering experienced by Emily prior to her death, pursuant to K.S.A. § 60–1801.

Following is a summary of the material uncontroverted facts established by the parties in accordance with the requirements of Fed.R.Civ.P. 56 and D.Kan.Rule 206(c). The court notes that plaintiffs, in their memorandum in opposition to the motion for summary judgment, apparently attempt to controvert some or all of defendants' statement of uncontroverted facts. Plaintiffs, however, failed to set forth "a concise statement of material facts as to which [plaintiff contend] a genuine issue exists." D.Kan.Rule 206(c). In general, plaintiffs' statement does not contradict the facts presented by defendants, but rather serve as a statement of additional facts, and the court will treat it as such.

On April 21, 1991, the Moziers were social guests at the home of defendants Charles and Brenda Parsons. The Parsons had completed installation of a swimming pool on their property just two weeks earlier. Those present had been swimming in the pool during the afternoon and then returned to the house for supper. Some time after supper Emily left the house. She was later found floating in the pool. She was not breathing and had no heart beat. Resuscitation efforts at the pool side and the hospital served only to restore breathing with the aid of a respirator. Heart beat was restored after emergency treatment at the hospital. Emily never

regained consciousness, but did blink her eyes and make some slight movement. She died two days later.

Emily was a generally well-behaved 3½ year old girl who listened to her parents and other adults. On the day of the accident, Emily was told by her parents and Brenda Parsons not to go near the pool without an adult. Emily was old enough to understand what that meant. Emily's parents were present at the Parsons' home at all times that day with Emily, and had not specifically entrusted the supervision of Emily to the Parsons. At the same time, both families informally shared responsibility for supervising each other's children.

The Parsons' home is located on a 60 acre tract in rural Bourbon County, just outside of Fort Scott, Kansas. The nearest house is approximately a quarter of a mile away, and their pool is shielded from public view by the house. The Parsons did not install a fence or any other safety devices at the time their pool was completed. The doors leading from the house to the pool area had latches that were out of Emily's reach, but they were not locked or latched at the time of the accident. There had been no injuries at the pool prior to this accident.

Prior to installing the pool, the Parsons discussed the desirability of a fence as a safety measure with Kendall Baumann, the pool salesman and installer. The Parsons ultimately decided against installing a fence because of the cost, the fact that there were no neighbors nearby, and information that they had received indicating that a fence was not required by their insurer. Baumann supplied the pool, but Charles Parsons acted as owner-contractor. Baumann also described other safety devices such as door locks and alarms which would alert residents when someone left the house. Baumann furnished the Parsons with safety pamphlets which contained information regarding the propensity of children to be attracted to pools. The Parsons finally did install a fence in 1993 after the birth of their youngest child, at a cost of $800.00.

## II. Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court considers all evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The non-moving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. Discussion

Defendants have moved for summary judgment based on two grounds. First, defendants argue that plaintiffs cannot establish willful or wanton negligence on the part of defendants, as is required in cases involving injuries to licensees. Second, defendants contend that summary judgment is appropriate in the survival action filed by the Administrator of Emily's estate because plaintiffs have produced no evidence of conscious pain and suffering.

### A. Standard of Care

■ While plaintiffs contend they can establish that defendants' conduct constituted willful and wanton negligence, plaintiffs also argue that the proper standard to be applied in this case is one of ordinary negligence. The duty owed to a plaintiff under Kansas premises liability law depends upon the status of the plaintiff at the time of the injury. *Bowers v. Ottenad*, 240 Kan. 208, 210, 729 P.2d 1103 (1986). The common law classifi-

cations of trespassers, licensees, and invitees are used to determine the duty owed by a landowner or occupier of land to the entrants on the land.

A trespasser is one who enters on the premises of another without any right or lawful authority and without permission of the possessor of the premises. The possessor owes the trespasser a duty to refrain from wilfully, wantonly, or recklessly injuring him or her. *Gerchberg v. Loney*, 223 Kan. 446, 448, 576 P.2d 593 (1978).

An invitee is one who enters or remains on the property at the invitation of the landowner or occupier for the benefit of the inviter or the mutual benefit of both inviter and invitee. *Gerchberg*, 223 Kan. at 449, 576 P.2d 593. If a plaintiff is classified as an invitee, the possessor owes that plaintiff the duty to exercise ordinary care, including a duty to protect and warn about any danger which may be reasonably anticipated. *Graham v. Loper Elec. Co.*, 192 Kan. 558, 563, 389 P.2d 750 (1964).

Finally, a licensee is one who is on the premises at the express or implied consent of the possessor of the premises. The category of licensee includes social guests. *Gerchberg*, 223 Kan. at 448, 576 P.2d 593. Injury to a licensee resulting from the possessor's ordinary negligence will not subject the possessor to liability. A possessor only owes a licensee the duty to refrain from wilfully, wantonly, or recklessly injuring him or her. *Duckers v. Lynch*, 204 Kan. 649, 651, 465 P.2d 945, 947 (1970).

The Kansas Supreme Court, in a decision rendered on January 21, 1994, has abolished the distinction between invitees and licensees, and held that the standard for both categories of plaintiffs will be one of reasonable care under all the circumstances. *See Jones v. Hansen*, 254 Kan. 499, 867 P.2d 303 (1994). That change, however, is to only be applied prospectively from the date of the decision. *Id.*, 867 P.2d at 311. Since this cause of action accrued in 1991, the standards of care described above, in effect prior to the *Jones* decision, will be applied to the facts of this case.

The parties agree that since Emily was a social guest defendants owed her only a duty to refrain from wilfully, wantonly, or recklessly injuring her, unless some exception applies. Plaintiffs argue alternatively for two exceptions, either of which would raise the standard imposed on defendants to that of ordinary care.

### 1. Active Negligence Exception

The first exception urged by plaintiffs is the "active negligence" exception which draws a distinction between an injury caused by some affirmative act on the part of the property owner and an injury resulting from the condition of the premises. *Bowers*, 240 Kan. at 222, 729 P.2d 1103. When the injury results from some affirmative activity, the duty owed to a licensee is one of reasonable care under the circumstances. *Id.* If, however, "the injury or damage results from the condition of the premises," the exception does not apply and "the duty of the occupier to the licensee is only to refrain from wilfully or wantonly injuring the licensee." *Id.*

The facts in this case show that Emily's injuries clearly arose out of a condition on the premises rather than some affirmative activity on the part of defendant's. While it is true that the active negligence exception "does not refer to acts of commission as opposed to acts of omission," *Bowers*, 240 Kan. at 213, 729 P.2d 1103, that does not change the focus of the exception as applying only when the negligence is not related to a condition of the premises. The plaintiffs in this case complain that the accident resulted from the absence of a fence or other safety measures that would have kept Emily away from the pool. The lack of safety measures was arguably due to an "act of omission" on the part of the defendants, but that would be true of any potentially dangerous condition on the premises.

Plaintiffs rely on the *Bowers* decision's favorable reference to the dissenting opinion in *Lemon v. Busey*, 204 Kan. 119, 461 P.2d 145 (1969). In *Lemon*, a five-year-old child died after falling from the roof of a church. The action claimed that defendants were negligent in leaving a door unlocked which allowed the child to gain access to the roof.

The Kansas Supreme Court, in upholding a summary judgment in favor of defendants, found that the negligence involved was not active negligence because it involved the failure to lock a door rather than any affirmative acts by the defendants. In his dissent, Justice Fatzer stated that "[t]he basis of liability in this case was not some claimed defect or obstacle in or on the church premises, but was the overt act of the defendants ... in leaving the door ... unlocked so as to afford the little girl access to the roof." *Id.,* 461 P.2d at 128.

Even though the *Bowers* Court favorably cited language from the dissenting opinion in *Lemon,* the *Bowers* decision did not specifically overrule the holding in *Lemon.* Even if Kansas courts today would decide *Lemon* differently, the facts in that case are distinguishable from the case at bar. In this case, the basis of liability is a defect on the premises, namely, the existence of an unprotected swimming pool. In *Lemon,* there was no defect or unsafe condition relating solely to the premises. Rather, the basis of that action was a specific act of omission on the part of defendants that led to the injury.

After reviewing the Kansas case law on this subject, this court concludes that Kansas courts would not apply the "active negligence exception" under the instant set of facts.

### 2. Attractive Nuisance Doctrine

■ Plaintiffs propose a second exception that would raise the standard of care owed by the defendants in this case to one of reasonable care. The "attractive nuisance doctrine" has been described by the Kansas Supreme Court as follows:

A possessor of land is subject to liability for bodily harm to children intruding thereon caused by some condition that he maintains on the premises if:

(1) the possessor knows, or in the exercise of ordinary care should know, that young children are likely to trespass upon the premises, and

(2) the possessor knows, or in the exercise of ordinary care should know, that the condition exists and that it involves an unreasonable risk of bodily harm to young children, and

(3) the children because of their youth either do not discover the condition or understand the danger involved in coming into the dangerous area, and

(4) one using ordinary care would not have maintained the condition when taking into consideration the usefulness of the condition and whether or not the expense or inconvenience to the defendant in remedying the condition would be slight in comparison to the risk of harm to children.

*Gerchberg v. Loney,* 223 Kan. 446, 447–48, 576 P.2d 593 (1978). This description of the attractive nuisance doctrine generally follows the Restatement (Second) of Torts, § 339.

Plaintiffs contend that the evidence in this case is sufficient to require that the attractive nuisance question be submitted to a jury for resolution. This court agrees.

■ In arguing that the attractive nuisance doctrine does not apply, defendants first propose that the doctrine applies only to situations in which an uninvited guest or trespasser is enticed onto the property. The court disagrees with this interpretation. Although the attractive nuisance doctrine and the Restatement rule are generally stated in terms of trespassing children, Kansas has never required that the child be a trespasser before applying the doctrine. In at least one case, the Kansas Supreme Court has approved using the doctrine when the injured child was a licensee, as in this case. *See Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593 (1978). This is also the view taken by the Restatement. *See* Restatement (Second) of Torts § 343B cmt. c (1977) (child invitee or licensee entitled to at least as much protection as a child trespasser).

■ Defendants also contend that the attractive nuisance doctrine cannot apply in this case because Kansas courts have held that a swimming pool is never an attractive nuisance. In *McCormick v. Williams,* 194 Kan. 81, 397 P.2d 392 (1964), the court stated that "a swimming pool does not belong in the same class with instrumentalities regarded as attractive nuisances, and that the question of attractive nuisance is entirely eliminated in this state from cases where the injury or

death occurs at or in a modern swimming pool." *Id.* at 82, 397 P.2d 392. While *McCormick* has never been explicitly overruled, after reviewing the underlying rationale of *McCormick* and subsequent treatment of the attractive nuisance doctrine by the Kansas Supreme Court, this court concludes that the current law in Kansas does not warrant such a sweeping exclusion of swimming pools from the category of attractive nuisance.

The *McCormick* court explained that the rule applicable to swimming pools was premised on the underlying principle that "liability under the attractive nuisance doctrine must be based on latent, not patent, dangers." *Id.* at 83, 397 P.2d 392 (citing *McGaughey v. Haines*, 189 Kan. 453, 458, 370 P.2d 120 (1962)). The court went on to state: "The inherent danger from a pool of water is quite patent. The danger is in no way hidden or difficult to understand." *McCormick*, 194 Kan. at 83, 397 P.2d 392.

This view of latent versus patent dangers has been clarified in later Kansas case law. In *Bartlett v. Heersche*, 204 Kan. 392, 462 P.2d 763 (1969), the court stated: "What the law considers to be a latent danger is not confined to things hidden from the eye alone. It extends to things hidden from the appreciation of the persons injured, hidden from the combination of eyesight and knowledge—hidden knowledge of the properties of things which the eyesight observes. It may thus be said a concealed danger extends to things hidden from appreciation of persons injured, as well as things hidden from the eye." *Id.* at 398, 462 P.2d 763.

If this interpretation of latent versus patent danger is applied, it is obvious that broad generalizations cannot be made regarding certain types of conditions. Instead, the Kansas courts applying this standard have viewed the application of the attractive nuisance doctrine on a case-by-case basis, taking into consideration not only the nature of the condition on the premises but also the knowledge and experience of the child involved. For example, the *Gerchberg* court upheld the applicability of the doctrine in a case in which a five-year-old boy was severely burned by a smoldering fire in a barrel that neighbors

used as an incinerator. *See Gerchberg*, 223 Kan. at 447–48, 576 P.2d 593. The court's ruling was made in spite of the fact that numerous earlier Kansas cases had found that the attractive nuisance doctrine did not apply to similar conditions. *See, e.g., Rose v. Board of Education*, 184 Kan. 486, 337 P.2d 652 (1959) (six-year-old boy burned by live coals from burning stump); *Rhodes v. City of Kansas City*, 167 Kan. 719, 208 P.2d 275 (1949) (smoldering fire under pile of debris); *Bruce v. Kansas City*, 128 Kan. 13, 276 P. 284 (1929) (smoldering fire in city dump).

Despite the *McCormick* court's general statement about swimming pools, Kansas courts have repeatedly applied the attractive nuisance doctrine to situations in which children lost their lives by drowning. *See Bartlett v. Heersche*, 204 Kan. 392, 462 P.2d 763 (1969) (two boys drowned in sand pit); *Galleher v. City of Wichita*, 179 Kan. 513, 296 P.2d 1062 (1956) (five-year-old boy drowned in abandoned sand pit); *Smith v. Evans*, 178 Kan. 259, 284 P.2d 1065 (1955) (thirteen-year-old boy drowned while swimming in abandoned sand pit); *Price v. Atchison Water Co.*, 58 Kan. 551, 50 P. 450 (1897) (eleven-year-old boy drowned in reservoir).

The *McCormick* court also cited two other elements lacking in that case that precluded an attractive nuisance finding. Neither of those elements are applicable to the case before this court. First, the court found no evidence that the landowner knew or should have known that children frequented the premises where the attractive instrumentality was located. *McCormick*, 194 Kan. at 84, 397 P.2d 392. In this case, defendants had actual knowledge of the presence of children. Second, the *McCormick* court noted that the swimming pool could not be seen from the street or sidewalk, and stated that it would have had to have been so situated as to entice the child onto the premises before liability could be imposed. This element has not been included in the most recent Kansas cases on the subject, and would be inapplicable in this case anyway since Emily was not a trespasser.

This court concludes that the nature of the condition causing the injury is not the controlling factor in determining whether the

attractive nuisance doctrine applies and that the *dicta* in the *McCormick* case regarding swimming pools would not be followed by Kansas courts today. After reviewing the elements for attractive nuisance outlined in *Gerchberg,* quoted earlier, this court further concludes that based on the evidence submitted in connection with this summary judgment motion the plaintiffs have established a submissible case for finding that the attractive nuisance doctrine applies. In other words, there is sufficient evidence to submit the attractive nuisance question to a jury for resolution.

### 3. Kansas Recreational Use Statute

■ In addition to arguing that neither the active negligence nor attractive nuisance exceptions apply to this case, defendants also contend that liability for this accident is precluded by the Kansas Recreational Use Statute, K.S.A. §§ 58–3201 to 58–3207. This statute exempts landowners from liability for mere negligent failure to warn recreational users of dangerous conditions when "land," including facilities and water, is made available for use free of charge. K.S.A. § 58–3203. Instead, liability attaches only for willful or malicious failure to guard against or warn of a dangerous condition, use, structure, or activity. K.S.A. § 58–3206.

· The Kansas Legislature first adopted this statute in 1965 using almost verbatim language from a model act recommended by the Council of State Governments. *Klepper v. City of Milford, Kansas,* 825 F.2d 1440, 1444 (10th Cir.1987). The purpose of recommending such legislation was to encourage private landowners to keep their lands open for public use. *Id.* Although Kansas courts have not addressed the issue, courts in other states in which this legislation has been adopted have consistently held that a landowner receives the protection of the statute only by permitting free use of the land and facilities by the general public and that the statute does not apply to recreational activities in a residential setting. *See, e.g., Wymer v. Holmes,* 429 Mich. 66, 412 N.W.2d 213, 219 (1987); *LePoidevin v. Wilson,* 111 Wis.2d 116, 330 N.W.2d 555, 563 (1983); *Boileau v. De Cecco,* 125 N.J.Super. 263, 310 A.2d 497, 500 (Ct.App.Div.1973), *aff'd,* 65 N.J. 234, 323 A.2d 449 (N.J.1974). This interpretation is consistent with the statutory language which describes the legislation's purpose as "encourag[ing] owners of land to make land and water areas available to the public for recreational purposes." K.S.A. § 58–3201. For these reasons, the court finds that the Kansas Recreational Use Statute has no application to this case.

### B. Breach of Duty

As just discussed, this court finds that there are genuine issues of material fact in dispute which preclude summary judgment on the question of attractive nuisance. If plaintiffs can establish at trial the elements required by the attractive nuisance doctrine, the standard of care against which defendants' conduct must be measured will be one of ordinary negligence. The evidence presented thus far, when viewed in the light most favorable to plaintiffs, cannot support a summary judgment finding that defendants were not negligent. *See Honeycutt v. City of Wichita,* 247 Kan. 250, 251, 796 P.2d 549, 551 (1990) ("The presence or absence of negligence is ordinarily a question of fact for the jury, rather than one for judicial resolution by summary judgment.").

### C. Pain and Suffering

■ Defendants also contend that the survival action filed by the Administrator of Emily's estate should also be dismissed because there is no evidence that Emily suffered conscious pain and suffering prior to her death. Plaintiffs, however, have presented evidence in the form of an affidavit by Anthony F. Porto, Jr., M.D., that indicates Emily would have experienced some conscious pain and suffering unless she was unconscious prior to entering the pool. Defendants have offered no evidence to show the point at which Emily would have become unconscious. Therefore, the court finds that summary judgment is inappropriate on this issue.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 48) is denied.

**IT IS SO ORDERED.**

### *ORDER*

Upon defendants' motion (Doc. 69), this court hereby certifies to the Kansas Supreme

Court, pursuant to K.S.A. 60–3201 *et seq.*, the following question of Kansas law which is deemed to be determinative of this action and as to which no controlling precedent exists in the decisions of the Kansas Supreme Court or Kansas Court of Appeals:

In a negligence action involving injury to a child, can the attractive nuisance doctrine be used to establish liability when the injury occurred in a residential swimming pool?

This issue arose in connection with defendants' motion for summary judgment in the above captioned consolidated cases. The relevant facts are outlined in this court's memorandum and order issued on April 7, 1994. This court's analysis of the issue is set forth at pages 10–15 of that order. After the ruling on the summary judgment motion, defendants filed motions for reconsideration and for certification of the question of law to the Kansas Supreme Court. In considering these motions, this court agrees that the question is an appropriate one for certification.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion (Doc. 69) to certify the above stated question of law to the Kansas Supreme Court is granted.

IT IS FURTHER ORDERED that the clerk of this court forward to the Kansas Supreme Court a copy of this order, under official seal, along with a copy of this court's Memorandum and Order dated April 7, 1994 (Doc. 67), and comply with any subsequent requests made by the Kansas Supreme Court for all or any portion of the record in this case.

IT IS FURTHER ORDERED that this case be removed from the trial calendar until receipt of the written opinion from the Kansas Supreme Court in response to the certified question. This court will also defer ruling on defendants' motion for reconsideration (Doc. 71) until that time.

**IT IS SO ORDERED.**